Argued and submitted September 19, reversed November 10, 1980

In the Matter of the Compensation of
Christine Nelson (Givens), Claimant,

NELSON
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(No. 79-1366, CA 17564)

634 P2d 245

Robert W. Muir, Albany, argued the cause for petitioner. With him on the brief was Emmons, Kyle, Kropp & Kryger, P.C., Albany.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund, Salem, argued the cause for respondent.

With him on the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant appeals the denial of her Workers' Compensation claim for aggravation of a work-related neck injury. She also seeks penalties and attorney fees for unreasonable denial of her claim. We reverse the ruling of the Workers' Compensation Board (Board) and reinstate the referee's order finding her injury to be compensable.

At the time of her injury, the claimant was working as a psychiatric aide at Fairview Hospital. On April 3, 1978, claimant injured her neck while taking part in a self-defense class at work. The course was designed to help her deal with violent patients. The injury was diagnosed as a cervical sprain and it was recommended that she receive physical therapy. The examining doctor noted that the claimant had been seeing a chiropractor, Dr. Bolin, for some time for treatment of headaches.

Dr. Bolin indicated that he had been treating the claimant since January, 1977. Claimant was receiving treatment, including neck adjustments, for low back problems and headaches. According to the claimant, these headaches dated from the time she was a young child, and her back problems stemmed from a fall down a flight of stairs in 1969. When Dr. Bolin examined claimant after the April 3 incident, he found her to have minor swelling in her neck at the "first cervical motor unit" and a loss of movement of that motor unit. He noted that claimant had a history of dyskinesia (difficulty or pain on movement) of the first cervical motor unit, and that this new injury exacerbated her condition.

On June 5, 1978, claimant returned to work. In July, Dr. Bolin noted that the claimant was receiving approximately one treatment per month. He expected the treatment to end in August and recommended that the claim be closed. In September, Dr. Bolin indicated that he was treating the claimant upon demand only. He felt that there was no evidence of disability or any permanent impairment from the April 3 injury, and that only occasional treatment would be needed. On October 10, 1978, a determination order was entered awarding the claimant temporary total disability only from April 6 through June 4, 1978.

Claimant reported that after her return to work in June she experienced pain in her neck. These pains intensified during the next six months. Finally, claimant felt she could not continue performing her work duties any longer. She quit her job in early January, 1979, and then sought to have her claim reopened for aggravation of her neck injury.

On January 24, 1979, Dr. Bolin wrote to SAIF indicating that the claimant had come to him on January 8 complaining of symptoms related to the April 3 injury. He noted severe suboccipital cephalgia (headaches) and loss of upper cervical flexibility with tenderness and swelling in the suboccipital region (the back of the head where it joins the neck). He reported that she was unable to perform her regular job duties. Dr. Bolin indicated that he was scheduling treatments for claimant once a week, with additional treatments if needed. He also scheduled her for an orthopedic evaluation with Dr. Anderson on March 6, 1979.

The claimant failed to keep her appointment with Dr. Anderson. However, she was examined by another orthopedic surgeon, Dr. Poulson. Dr. Poulson diagnosed claimant's problems as a chronic strain and, "very likely," a degenerated disc which was slightly bulging and which caused the claimant pain at times in the posterior neck and right upper extremity, depending on her activity. On April 30, Dr. Poulson wrote to SAIF indicating that the claimant wanted her claim reopened. He noted that he had nothing more to offer the claimant on a conservative treatment basis, but felt that the case should be reopened for further diagnostic work in the form of a myelogram to rule out organic pathology. A myelogram was performed and, on June 28, 1979, Dr. Poulson wrote to SAIF indicating that the test was negative, that no further treatment was warranted, and that he felt the claimant's case could remain closed.

The State Accident Insurance Fund (SAIF), employer's carrier, paid the claimant temporary total disability for the month of January. On February 1, 1979, however, it denied her claim for aggravation. SAIF did not give any specific reason for the denial, other than that it was based on an examination of the claimant's file. Claimant appealed SAIF's denial of her aggravation claim. On

September 24, 1979, a hearing was held. The referee ordered SAIF to reopen the claim for payment of temporary total disability compensation from January 8, 1978, through June 28, 1979, the date on which Dr. Poulson indicated that the claimant was again stationary, and to resubmit the matter to the Evaluation Division with regard to permanent partial disability. The referee based his decision on the opinions of Dr. Bolin and Dr. Poulson and noted the fact that, despite its denial, SAIF did pay temporary total disability for the month of January and most of the claimant's medical bills.[1] The referee concluded that penalties were not justified in this case.

On appeal, the Board reversed the referee's order. It found that the medical evidence failed to indicate that the claimant's condition had worsened since her claim was closed in October, 1978. It took particular note of claimant's history of back and neck complaints pre-dating her April 3 injury.

ORS 656.273 (1) establishes the statutory standard for claims of aggravation as follows:

"After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, *for worsened conditions resulting from the original injury.* " (Emphasis added).

On appeal, SAIF contends that the claimant presently suffers from the condition she had prior to her industrial injury, rather than from an aggravation of injury. The claimant maintains that her neck pain and related symptoms are different from the symptoms she experienced prior to her injury at work, and that they have increased in severity since her return to work.

The claimant testified that, prior to April 3, she never experienced any problems with her neck. She admitted that she did have problems with tension headaches and low back pain for some time and was seeing Dr. Bolin for relief of these symptoms. However, she stated that the pain experienced after April 3 was of a different

---

[1] It is irrelevant that SAIF initially paid claimant's claim for temporary total disability and continued to pay her doctor bills. *Jacobson v. SAIF,* 36 Or App 789, 793, 585 P2d 1146 (1978), *rev den* 284 Or 521 (1978). SAIF was obligated to make temporary payments or deny her claim within 14 days. ORS 656.273(6).

kind. She described it as resembling a stiff neck, with a tingling in her arms and headaches originating in her neck, rather than a tension headache centered in her eyes or the top of her head. She indicated that she has swelling at the base of her neck which she never had before. She testified that after returning to work in June the pain gradually became stronger and, as time passed, she found she could do less and less at work. She reported missing a good deal of time from work from June through December. She took a vacation in December, but found it was of little help; she was unable to return to work the next month.

It was Dr. Bolin's opinion, on deposition, that the claimant's condition had worsened from the time she returned to work until the time he examined her in January, 1979. He noted that when he released the claimant to return to work in May she had mild symptoms. On January 8, when he examined her, he found her condition aggravated and the presence of an acute inflammatory reaction, with mild swelling and edema around the cervical segment and a loss of flexibility.

With respect to her preexisting condition, Dr. Bolin stated that he first treated the claimant in January, 1977. At that time her complaints were suboccipital headaches, which are headaches behind the back of the head where the neck joins the head, and low backache associated with partial right elbow and arm numbness. These symptoms were related to a cervical (neck) nerve root problem. He indicated that the original areas of treatment were the first cervical, the sixth cervical, the second thoracic and fifth lumbar region of the spine. Her problems, according to the history she gave Dr. Bolin, stemmed from a fall down a flight of stairs just prior to the birth of her child some eight years before. Dr. Bolin stated that he treated her on April 3, after her injury at work, for injury to the lower cervical area. Two days later she was given treatment to the upper cervical area for suboccipital headaches. He stated that this was the same area he had been treating all along.

Dr. Bolin indicated that, while the April 3 injury was an aggravation of the claimant's preexisting condition, it was also a new injury. This was, for example, the first time he had noted the presence of an acute inflammatory

reaction. Upon cross-examination, he admitted that, while his first observation of such a reaction was on April 3, he could not be sure the claimant did not have the same inflammatory reaction before because he had no reason to take note of it. He could also not be sure of the significance of Dr. Poulson's finding that the claimant had a degenerated disc, since there had been no neurological-orthopedic workup prior to the industrial injury. Dr. Bolin agreed that there was no objective evidence that the claimant's present condition was the result of her work-related injury, as opposed to her preexisting condition.

Dr. Poulson's deposition was also taken.[2] It was his opinion, based on the history given to him by the claimant, that the claimant's condition, when he examined her in April, 1979, was a continuation and an aggravation of the symptoms she experienced as a result of her industrial injury the year before. Dr. Poulson was not aware, however, of claimant's history before the April 3 injury.

■ On the basis of Dr. Bolin's uncontradicted testimony and claimant's testimony, we find that claimant's condition has worsened since she was released for work in May, 1978. We conclude that her present condition is a result of her preexisting condition as aggravated by her industrial injury. Claimant's present condition involves, in part, a swelling in the neck area. Claimant testified that she never experienced this swelling at the base of her neck before April 3. Dr. Bolin indicated that he first noted the presence of mild swelling after claimant's injury at work. Although he admits that it could have existed before the industrial injury, it is unlikely that such a swelling would have gone undetected by him.

It is undisputed that claimant had a chronic preexisting condition that involved a cervical nerve root problem. Her industrial injury aggravated this condition. Her present condition, involving an acute inflamatory reaction,

---

[2] At the hearing level, SAIF objected to the introduction of any medical evidence or testimony after SAIF's denial of February 1, 1979. This objection is not raised as an issue before us. In any event, Dr. Poulson's opinion is of little help, given the fact that he was not aware of claimant's condition prior to her injury. Thus, we decline to discuss the propriety of relying on medical evidence received after the denial of claimant's claim.

is a result of her preexisting condition as altered by her industrial accident. The underlying problem may be the same, but the claimant's symptoms are different both in degree and in kind since her work-related injury. On that basis, claimant is entitled to have her claim reopened.

■ Claimant also seeks penalties and attorney fees, claiming that it was unreasonable for SAIF to deny her claim of aggravation. ORS 656.262(8). We disagree. In light of claimant's medical history, it was not unreasonable for SAIF to question the basis of her aggravated condition.

The order of the referee is reinstated.

Reversed.