In the Matter of the Compensation of
Charlene V. Devereaux, Claimant.

DEVEREAUX,
*Petitioner,*

*v.*

NORTH PACIFIC INSURANCE CO.,
*Respondent.*

(83-03330; CA A32542)

703 P2d 1024

James L. Edmunson, Eugene, argued the cause for petitioner. With him on the brief was Malagon & Associates, Eugene.

Mark A. Anderson, Portland, argued the cause for respondent. With him on the brief were Donald P. Bourgeois, and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Claimant seeks review of an order of the Workers' Compensation Board reversing the referee's decision that her carpal tunnel syndrome condition is compensable and that she is entitled to penalties for the insurer's unreasonable denial of her claim. In addition to a reversal on those issues, she seeks a modification of the Board's order with respect to her entitlement to interim compensation and penalties for the insurer's failure timely to pay her the full amount of that compensation.

We turn first to the issue of compensability. Claimant, age 38 at the time of the hearing, began to work for the employer in October or November, 1982. Her work involved two tasks: sorting and stacking wooden blocks after taking them off a conveyor belt and operating a saw. She sought treatment for pain in both hands and forearms from Dr. Wichser, on February 16, 1983. He initially diagnosed probable bilateral carpal tunnel syndrome and later confirmed that diagnosis. The insurer denied the claim on the ground that claimant's condition preexisted her employment.

Claimant had first experienced problems with her left forearm in 1974 or 1975 while working for a different employer. That job involved sorting flowers on a conveyor belt. She testified that a pinched nerve under her collar bone caused pain and numbness from her elbow to her hand and caused the forearm and hand to fall asleep. The pain, which particularly bothered her at night, subsided with treatment.

In 1981, she injured her left forearm and hand in a roller skating accident, causing pain and numbness from her elbow to her fingers. The pain was different than before and apparently was worse. A physician's assistant in Dr. Wichser's office treated her, and the pain subsided in approximately two weeks. The assistant noted on the chart of October 6, 1981, that claimant had had a numb left wrist and pain in her left forearm for three months and that it was especially bad at night through early morning. The assistant made a tentative diagnosis of carpal tunnel syndrome.

Some time before she began to work for employer, claimant had problems with her hands while assisting a friend, Davis, to erect a pool cover. Her hands became numb while

holding a heavy pole above her head for approximately 20 minutes. The feeling returned to them when she lowered her arms.

Davis, who became her supervisor at the employer, testified that, before claimant began to work, she had complained of the same problems of which she now complains. He believed that she had made those complaints in the summer of 1982 but admitted that he was not certain and that it may have been earlier. He could not recall whether she had complained of pain in one or both hands. The chart notes of Dr. Wichser, who regularly treated claimant for unrelated problems resulting from a May, 1982, car accident, contain no indication of such complaints between May 21, 1982, and February 16, 1983, when claimant first sought treatment for her current problems.

If claimant's condition preexisted her employment, to establish her claim she must prove by a preponderance of the evidence that her work activities caused a worsening of her underlying condition resulting in an increase in pain to the extent that it caused disability or required medical services. *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979). The work activities must be the major contributing cause of that worsening. *See SAIF v. Gygi,* 55 Or App 570, 639 P2d 655, *rev den* 292 Or 825 (1982). If the condition was not preexisting, she must prove that her work activities were the major contributing cause of the condition itself. *SAIF v. Gygi, supra.*

The insurer based its denial on the October 6, 1981, chart notes and a letter from Dr. Teal, to whom claimant had been referred by the insurer. Dr. Teal stated that, based on the history provided by Dr. Wichser, "it sounds like the symptoms pre-existed her employment" and that her job "aggravated her symptoms but did not cause the carpal tunnel syndrome." After the insurer's denial, he changed his opinion after reading a letter from Dr. Wichser protesting the denial. In that letter, Dr. Wichser noted that the October 6, 1981, tentative diagnosis was not made by a qualified physician and was never confirmed, that claimant had told him that she had been asymptomatic from the time of the roller skating accident until early 1983, that his chart notes corroborated her story and that, in any event, there was no history of problems in her right hand or forearm. He concluded that claimant was

without symptomatology related to carpal tunnel syndrome for a considerable period of time before she began work and that the insurer's denial was therefore improper. On that basis, Dr. Teal changed his earlier opinion and stated:

"* * * Dr. Wichser's letter * * * established that this was not a condition which preexisted her employment * * *. Even if her symptoms had occurred in the past prior to her employment, this appears to be a fairly clear cut case of aggravation of a carpal tunnel syndrome by her work. In either case, it appears to me that the indemnity carrier has responsibility for covering her claim. * * *"

■ ■  The evidence does not establish that claimant's carpal tunnel syndrome preexisted her employment. Although she had experienced symptoms in 1974-75 similar to those of which she now complains, that problem resolved with treatment. There is no medical evidence that the problem was related to carpal tunnel syndrome. With respect to the injury suffered in the skating accident, as Dr. Wichser noted, the tentative diagnosis of carpal tunnel syndrome was not made by a qualified physician and was never confirmed. That injury apparently also resolved with treatment in a short time. The pool cover incident is of little significance. Feeling returned to claimant's hands immediately after she lowered them, and she sought no medical treatment. Davis' testimony is not persuasive enough to establish that claimant's condition preexisted her employment in the absence of any medical evidence to corroborate his testimony. Finally, claimant's problems with her right hand and forearm commenced only after she began to work for the employer. The evidence did not show that her condition preexisted her employment. We conclude that her claim is compensable, because both Dr. Wichser and Dr. Teal relate her condition to the repetitive movements related to her work.

The next issue is whether the insurer's denial was unreasonable. If it was, claimant is entitled to penalties under ORS 656.262(10):

"If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

*See Nelson v. SAIF,* 49 Or App 111, 118, 634 P2d 245 (1980); *Mavis v. SAIF,* 45 Or App 1059, 1062-63, 609 P2d 1318 (1980). When it issued the denial, the insurer had before it the October 6, 1981, chart note with the diagnosis of probable carpal tunnel syndrome and Dr. Teal's letter stating that claimant's work merely caused the symptoms of her preexisting condition to become symptomatic. Dr. Teal later changed that opinion, but that was after the insurer had denied the claim. On the information available at the time of its denial, the insurer could have had a reasonable doubt as to the compensability of the claim, and its denial was therefore not unreasonable. *Nelson v. SAIF, supra.* Claimant is not entitled to penalties for the denial.

■       The next issue is claimant's entitlement to interim compensation and penalties for insurer's failure timely to pay her the full amount to which she argues she was entitled. When claimant visited Dr. Wichser on February 16, he released her for light duty work. She returned to work and worked until March 8. During that period, she performed the second and less rigorous of the two tasks she normally performed, operating the saw. The insurer did not pay the first instalment of compensation until April 8. That payment covered the period from March 9, the day after claimant left work, to April 8.

Under ORS 656.262(4), the first instalment of compensation due a claimant "shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim." Claimant argues that she was entitled to interim compensation beginning February 16, the date Dr. Wichser sent his "First Medical Report For Workers' Compensation Claims" to the insurer, and that, because the insurer's first payment was not made within 14 days of that date, she is entitled to penalties under ORS 656.262(10). The referee agreed. The Board modified the referee's decision. It held that claimant was entitled to interim compensation beginning on February 22, the day the insurer received notice of the claim,[1] and that, therefore, the penalties assessed should be based on the compensation due during the period commencing with that date.

---

[1] Employer received notice of the claim that same day.

■    Claimant urges this court to modify the Board's order and reinstate the referee's decision. The insurer argues that the award of penalties should be completely stricken from the Board's order because, under *Bono v. SAIF,* 298 Or 405, 692 P2d 606 (1984), claimant was not entitled to interim compensation between February 16 and March 8, because she was working during that time. In *Bono,* the court held that interim compensation need not be paid to a worker who has not demonstrated an absence from work during the time period for which such compensation is sought. Under *Bono,* claimant was not entitled to interim compensation between February 16 and March 8.[2] Thus, her argument that penalties should be based on an amount of interim compensation beginning February 16 fails. However, because the insurer did not cross-petition, we decline to strike the award of penalties. A respondent who has not cross-appealed cannot recover a more favorable judgment from the appellate court than was entered below. *Booras v. Uyeda,* 295 Or 181, 188-89, 666 P2d 791 (1983); *R. A. Gray & Co. v. McKenzie,* 57 Or App 426, 645 P2d 30, *rev den* 293 Or 340 (1982). We must affirm the Board's order on this issue.

■    Finally, the insurer argues that the Board erred in upholding the referee's decision that claimant was entitled to penalties for the insurer's failure to accept or deny the claim within 60 days as required by ORS 656.262(6). The insurer's failure to cross-petition also precludes our review of that decision. *Booras v. Uyeda, supra; R. A. Gray & Co. v. McKenzie, supra.*

Reversed on issue of compensability and remanded with instructions to accept the claim; otherwise affirmed.

---

[2] In *Bono,* the court stated that the claimant was not entitled to interim compensation, because he did not establish "that he had been absent from work *or that his earning power was diminished.*" 298 Or at 410. (Emphasis supplied.) Claimant did not raise the issue of whether she was entitled to interim compensation because she was released only for light duty work and therefore suffered a diminished earning capacity. There is no evidence that she earned less than her regular pay when she returned to work. Furthermore, when she did return, she performed a task that was normally part of her job.