Argued 6 November; decided 17 November, 1902.

**HUME *v.* TURNER.**

[70 Pac. 611.]

APPEAL—APPEALABLE JUDGMENT.

A final order from which an appeal may be taken must be one affecting some substantial right of the appellant (Hill's Ann. Laws, § 535), from which it necessarily follows that where a party's rights have been fully protected by a final order he cannot appeal because the relief was given for a wrong reason.

From Curry: JAMES W. HAMILTON, Judge.

This is a suit by R. D. Hume against Jesse Turner, as sheriff of Curry County, and others, from an injunction, instituted ·August 2, 1898. Plaintiff, in his complaint, avers that he is, and has been for more than fifteen years, the owner of all the lands lying and being adjacent to either bank of Rogue River, in Curry County, Oregon, extending from its mouth up stream for a distance of five miles (particularly describing them), and also all tide, swamp, and overflowed lands lying between such banks, together with a portion of the bed of the stream; that there is in the waters thereof appurtenant to said lands, and has been in continuous existence for more than forty years last past, a private fishery devoted to the purpose of catching salmon with seines and nets; that plaintiff is the owner of said fishery, which, in extent, comprises the entire stream for a stretch of a mile or more in length, extending from its mouth inland to a short distance above what are popularly known as "Hunt Rock," on the north bank, and "Mill Rock," on the south; that he has been in the exclusive, open, notorious, and adverse possession and use thereof, under a claim of right, title, and ownership, for more than twenty years prior to the commencement of this suit, and occupied and used the same continuously as such for catching salmon with seines and nets to the exclusion of all persons whomsoever, and that his grantors and predecessors so occupied and used the same for more than twenty years prior to his acquirement of possession and title; that such river is navigable for a distance of about a mile from its mouth at high tide for small seagoing vessels, drawing not more than eight feet of water, and above that

point it is navigable only for small boats and scows; that the defendants, conspiring together to prevent plaintiff from carrying on his business and catching salmon in such fishery, entered upon his fishing ground and into said fishery, near the mouth of said river, at a place where plaintiff had been accustomed to draw his seines and nets, and placed and extended therein certain nets anchored to buoys, and thereby prevented plaintiff from drawing his seines and nets therein as he had been wont to do, and, in furtherance of said conspiracy, they wilfully and maliciously cut and destroyed the seines and nets of plaintiff, and caused them to go adrift and become useless, and that, when plaintiff's employes remonstrated with them for their unlawful acts, they, by threats and violence, drove them from said fishery, and thereafter continued to enter upon the tide lands and uplands of the plaintiff, and in and upon said private salmon fishery, with boats and nets, and to fish therein for salmon, and have taken therefrom large numbers thereof, to the interruption, injury, and annoyance of plaintiff; and that defendants assert and maintain that they have some right, interest, or estate in and to such private fishery, and said tide and uplands belonging to plaintiff, the exact nature of which he is unable to define. The prayer is, in substance, that defendants be required to set forth their right, estate, or interest therein, whatever it may be, that it may be adjudicated; that an injunction issue pending the trial; and that thereafter defendants, their agents, etc., be perpetually enjoined and restrained from entering in or upon said fishery for the purpose of fishing therein with seines or nets, or otherwise, or in any manner interrupting plaintiff in the use thereof, and from trespassing upon said tide or uplands, or in any way hindering or disturbing plaintiff in the enjoyment of said fishery, or in drawing seines and nets therein; and for general relief.

Portions of the complaint were stricken out on motion, but there was no amendment. The answer put in issue nearly all the averments,—among others, those touching the defendants' claim of right, title, or interest in the subject-matter of the controversy,—and set up affirmatively that the fishery men-

tioned in the complaint is situated in the navigable tide water of Rogue River, and in the bed or channel thereof, and is and was at all times mentioned in the complaint a public fishery, and that, while defendants were engaged in fishing therein, plaintiff's employes attempted to remove their nets and prevent them from pursuing the business of catching salmon, in which they were rightfully and lawfully engaged, and that the acts of trespass complained of were only such as were necessary to protect the nets of the defendants, and their right of fishing in said stream.

The trial court made findings of fact, in brief, as follows: (1) That plaintiff is the owner and in possession of all the lands described in the complaint; (2) that Rogue River is a navigable stream, and flows through and between said lands; (3) that plaintiff is the owner in fee and entitled to the possession of all the tide lands on Rogue River abutting and adjacent to the lands above described; (4) that plaintiff and his predecessors in title have used a part of said lands and the tide lands adjacent thereto as a private fishery for about forty years, and that said lands were purchased by plaintiff for use as a private fishery, and are chiefly valuable in such capacity; (5) that defendants Charles and William Strahan about June 28, 1898, and at different times thereafter, committed repeated trespasses upon said tide lands of plaintiff; that by said act and acts of defendants the plaintiff has been hindered and prevented from fishing in or using said salmon fishery so carried on by him in Rogue River, opposite to and adjacent to said lands,—and, as conclusions of law, that plaintiff is entitled to a decree enjoining defendants, and each of them, from entering upon said lands described in plaintiff's complaint, and tide lands adjacent thereto, or from fishing or drawing seines thereon, and from anchoring set nets or other obstructions in the water fronting said tide lands in any place or places where said lands are used for landing seines by the plaintiff. The decree is in accordance with the findings of fact, and the plaintiff, not being satisfied therewith, appeals.          DISMISSED.

For appellant there was a brief over the names of *R. H. Countryman, Williams, Wood & Linthicum,* and *Andrew M. Crawford,* with an oral argument by *Mr. Countryman* and *Mr. George H. Williams.*

No appearance or brief for respondents.

MR. JUSTICE WOLVERTON, after stating the facts, delivered the opinion of the court.

It is shown by the testimony that the plaintiff and his predecessors in interest have continuously for about forty years fished for salmon in the waters of Rogue River, within the stretch thereof defined in the complaint, and that their use and occupation thereof have been exclusive of all others, with but slight interruption, until the present controversy arose. Subsequent to plaintiff's utilization of the fishing grounds, in 1877, he had acquired all the land along the river from its mouth for five miles contiguously, which includes all tide, swamp, and overflowed lands. The bed and consequently the shores of the stream are, by the action of the water, constantly shifting; and by purchases from the state, as relictions appear from time to time, plaintiff has come to possess title to portions of what is now the bed of the stream. This is particularly so at the mouth of the river, where his title reaches from shore to shore. So that plaintiff is not only the owner and in possession of every foot of land abutting upon Rogue River upon either side for a distance of five miles from its mouth, and all tide and overflowed lands adjacent thereto, but in places, especially at the mouth thereof, of the very bed of the stream, so that he is in absolute control of all available landing places for hauling seines and operating the fishery. Plaintiff and Riley & Stewart, his immediate predecessors, kept the stream free from snags, as nearly as was practicable, from Hunt Rock to the mouth; and, while the evidence does not show that Riley & Stewart ever used other than a seine for fishing, the plaintiff has, when the seasons were propitious, employed drift nets, floating them from Hunt Rock to the mouth, and has at times employed set nets. These are the ordinary gill or drift nets

made stationary. There are certain places within the fishery, in connection with the banks of the stream, occupied and utilized for operating seines, and which are denominated "hauling grounds." The most profitable of these are at the mouth of the river on the south and north spits,—one immediately below Hunt Rock, and another at the lower end of Dewey's Island. While these places are generally used by plaintiff when engaged in fishing, other places along either bank of the stream are utilized whenever it is deemed convenient or profitable; and it is asserted by the plaintiff in his testimony, for which there is some corroboration, that the banks of the stream have been used all the way from the mouth to Hunt Rock for drawing seines. So that plaintiff has not been confined in the operation of his seines to the three or four places named.

The seines are from 700 to 1,350 feet in length, and in their operation are extended from the margin into the stream, and returned in the form of a loop; thus inclosing certain space in the water, and ensnaring such fish as may be found therein. The sweep of the seine is referred to as comprising such space as is covered in its operation. At the mouth of the river the sweep often extends the full width of the channel, depending upon the state of the tide. At the eddies adjacent to the north and south spits, just above the mouth, it extends perhaps halfway across, and at the upper hauling grounds, especially at the island, two thirds of the way; and whenever utilized the seine extends beyond the shore line, and into the bed of the stream. The defendants used drift nets, employing them, as occasion suggested, as seines. With these they drifted from Hunt Rock down, anchored set nets in different places in the stream, and operated at the mouth thereof, so that it was impossible for plaintiff to properly operate his nets and seines in the usual manner. The hindrance came from the liability of bringing the nets and seines of the plaintiff in contact with those of the defendants. The defendants cut one of plaintiff's seines, and by threats and violence drove his men away, and continued for some time thereafter to occupy the stream in fishing; thus hindering and denying the plaintiff free access to the fishery.

The defendants offered no evidence, except such as tended to exculpate themselves as to the repeated trespasses complained of, and made no pretensions to having any right or interest in or to the lands or fishery described in the complaint.

In the light of these conditions, the trial court made its findings and entered its decree in favor of the plaintiff as above noted. The defendants have made no appearance whatever in this court, while the plaintiff's contention, as stated in his opening brief, is that he has the exclusive right to catch salmon with seines and nets by reason (1) of a prescriptive right in himself and his predecessors and grantors, acquired through the usages and customs of this state, and particularly through the local usages or local fishing customs of Curry County; (2) of legislative enactments of this state; and (3) of the grant of tide lands thereby to plaintiff and his predecessors.

In pursuance of and by authority of the acts of the legislature of this state adopted in 1872, as amended by the acts of 1874, 1876, and 1878, relative to the tide or overflowed lands, the plaintiff and his predecessors acquired the tide lands at the mouth and along the margin of Rogue River. In 1899 the legislature passed another act applicable to said river and certain of its tributaries, whereby the owner or owners of tide lands and riparian owners above tide waters are granted the exclusive right and privilege of fishing for salmon with seines and nets, and hauling and landing the same on such lands, and prohibiting any person or persons whomsoever from anchoring nets or placing any obstruction in the water fronting said tide lands, in any place or places where the same are used for hauling or landing seines. By supplemental complaint, filed August 11, 1899, this latter act was especially assigned as one of the grounds upon which the plaintiff was entitled to maintain his suit for an injunction. The question arises at once and necessarily whether the plaintiff has not obtained by the decree of the trial court all that he demanded, and, if without a grievance, whether he has the right of appeal. The trial court reduced its opinion to writing, and the ground upon which it based the decree is therefore readily ascertainable. The court

says: "It is settled law that 'the state, by virtue of its sov-
creignty, has authority to regulate fisheries within its borders,
and may prescribe the place, as well as the times, in which
fish may be taken, and may make exclusive grants of fisheries
in designated waters, so far as they do not impair private
rights already vested.' " And after applying the act of 1899,
it continues: "It will be the duty of the court to grant per-
petual injunction enjoining defendants from trespassing upon
any of the lands of the plaintiff described in the complaint,
and from anchoring nets or placing any obstructions in
the water fronting said tide lands, in any place or places
where said tide lands are used by plaintiff for hauling or land-
ing seines." And the decree is in accordance therewith. It
declined, it is true, to put the injunction upon the ground of a
prescriptive right in the plaintiff, regardless of the enabling
statutory provisions; but it is wholly immaterial upon what
the decree was based, so that plaintiff has obtained all the relief
he demanded or is entitled to. The written opinion of the trial
court is no part of the record, and does not qualify or impair
the effectiveness of the decree in any particular, and does not
ingraft upon it any peculiar signification, other than it would
have possessed if no opinion had been announced. Recalling
the defense interposed, which consists of a denial of any claim
of right or title in or to any of the lands (either uplands or
tide or overflowed lands), or the fishery described in the com-
plaint, and of the averments that such fishery is situated in
navigable tide water and in the bed or channel of Rogue River,
and is and was at all times mentioned in the complaint a public,
and not a private, fishery, the decree has determined the whole
dispute in favor of the plaintiff. It is a statutory rule that a
litigant can only appeal from an order affecting a substantial
right (Hill's Ann. Laws, § 535), which accords with the funda-
mental principle, everywhere recognized, that he has no appeal
unless aggrieved by the judgment or decree of the trial court:
2 Cyc. Law & Proc. 631; *Pierse* v. *West*, 29 Ind. 266; *Craft* v.
*Bent*, 8 Kan. 328; *Commonwealth Ins. Co.* v. *Pierro*, 6 Minn.
569; *Smith* v. *Dickinson*, 140 Mass. 171 (3 N. E. 40); *Sturte-*

*vant Co.* v. *Bohn S. & Door Co.* 59 Neb. 82 (80 N. W. 273); *Porter* v. *Singleton,* 28 Ark. 483. Under the conditions prevailing, the decree would seem effectually to preclude the defendants from entering upon or occupying the fishery at any point, and plaintiff could have no greater relief.

Counsel have made no contention here that the decree was not broad enough in its scope, but have insisted that the court should base its conclusions upon a prescriptive right, and not alone upon the statute; but, if the plaintiff has obtained a decree for what he asks or is entitled to, it can make no difference by what course of reasoning the court arrived at the result. His grievance must arise from a decree affecting a substantial interest, and this, it seems to us, cannot be so characterized. We are aware that it is unusual for the court to raise such a question *sua sponte,* but there is no appearance here for the defendants,—they presuming, as we suppose, that plaintiff could obtain no greater relief than that which was granted by the trial court; and we cannot be expected to examine legal questions of great moment unless there is some grievance to relieve against. The appeal must therefore be dismissed.

DISMISSED.