Argued and submitted July 29, 1981, reversed and
remanded April 12, respondent Fenwick's reconsideration
and appellant's reconsideration denied June 24,
petitions for review allowed September 14, 1982 (293 Or 521)

## BOORAS,
*Appellant,*

*v.*

## UYEDA et al,
*Respondents.*

## (No. A7803-04031, CA 18375)

643 P2d 413

Hugh L. Biggs, Judge Pro Tempore.

R. Bruce Dusterhoff, Portland, argued the cause for appellant. With him on the briefs was Case & Dusterhoff, Portland.

Gerald R. Pullen, Portland, argued the cause and filed the brief for respondent Tokiko Uyeda.

Larry A. Dawson, Portland, argued the cause and filed the brief for respondent Constance Fenwick.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warden, Judge.

WARDEN, J.

Buttler, P.J., dissenting.

## WARDEN, J.

This is a suit for specific performance of an earnest money contract for the purchase of an apartment complex. The trial court found that the earnest money contract was a "valid and legally enforceable contract" and that plaintiff had performed all conditions precedent required to be performed by him, but it denied specific performance on the ground that it would be "impractical, difficult and time-consuming" to enforce the contract. As an alternative to specific performance, plaintiff was awarded $20,000 equitable compensation to be paid by defendant seller; his request for prejudgment interest on the award was denied. Plaintiff appeals, assigning as error the denial of specific performance and, in the alternative, the denial of prejudgment interest. He suggests that specific performance be ordered, conditional on his tender of the full purchase price. Defendants do not cross-appeal.

In July, 1976, defendant Uyeda and her husband, now deceased, listed an apartment complex for sale with a realtor. On August 23, 1976, plaintiff[1] made an offer by a standard form "Official Earnest Money Contract" and an attached addendum. On September 7, 1976, after some negotiation, the Uyedas signed the earnest money contract and addendum.[2] In the months that followed, plaintiff obtained a first mortgage financial commitment, furnished appraisals on security property and in other respects complied with obligations of the contract.

On January 21, 1977, without prior notice to plaintiff, the Uyedas re-listed the property with another realtor. On February 16, 1977, defendant Fenwick, also a realtor, prepared an earnest money agreement on her own behalf for the purchase of the re-listed property for the same amount of money as provided in plaintiff's contract, payable in monthly installments and secured by a trust deed.

---

[1] The offer was actually made by plaintiff and another purchaser who subsequently assigned his interest in the property to plaintiff.

[2] The earnest money contract and addendum provided for a $120,000 purchase price; $5,000 down payment; an additional $29,500 at closing; and the balance of $85,000 payable in monthly installments of not less than $625 per month at 8% per annum interest. Sellers were to receive a second mortgage as security for the contract balance. In addition, plaintiff was to pledge additional securities.

Defendant Fenwick's offer was expressly conditioned on the Uyedas' obtaining a release of plaintiff's contract. The Uyedas accepted defendant Fenwick's offer on February 23, 1977, and entered into a land sale contract with her on April 8, 1977, without first obtaining a release from plaintiff. Shortly thereafter, defendant Fenwick took possession of the property, started receiving the rentals from the tenants and has been in possession since that time. In March, 1978, plaintiff brought this suit against Uyeda and Fenwick seeking specific performance of the earnest money contract.

■ ■   Although they filed no cross-appeal, defendants contend that the trial court erred in concluding that the contract was specifically enforceable, because plaintiff failed to prove a legally enforceable contract. Plaintiff argues that defendants cannot challenge that finding without cross-appealing. We agree. It is well settled that, although this court reviews a case in equity *de novo,* a respondent who has not cross-appealed cannot obtain here a judgment more favorable to him and less favorable to the appellant than the judgment entered below. *Gas-Ice Corporation v. Newbern,* 263 Or 227, 234, 501 P2d 1288 (1972); *Hofer v. Hofer,* 244 Or 88, 92, 415 P2d 753 (1966); *Graf v. Don Rasmussen Co.,* 39 Or App 311, 315, 592 P2d 250 (1979).

The main issue in this case is whether plaintiff is entitled to specific performance of the earnest money contract.

■   The granting of specific performance is a matter of sound judicial discretion "governed by the established principles and rules which constitute the body of equity jurisprudence." *Wittick v. Miles,* 274 Or 1, 6, 545 P2d 121 (1976). One of those rules is that " '[e]quity may * * * award damages in lieu of a decree of specific performance when the plaintiff has made out an equitable case for intervention but performance has become impossible or impracticable, * * *.' " *Walker v. Mackey et al.,* 197 Or 197, 209, 251 P2d 118, 253 P2d 280 (1953) (citing 49 Am Jur, Specific Performance, 198 § 174).

■   In the present case, the trial court concluded that specific performance would be impractical, primarily

because (1) plaintiff had disposed of some of the property pledged to secure his performance of the contract and (2) defendant Fenwick had managed the apartment complex since 1977, and had invested in improvements on the property. We will consider these factors in order.

Plaintiff's failure to retain pledged security property is relevant only to the protection of defendant Uyeda's interest under the land sale contract. If plaintiff were to pay defendant Uyeda the full purchase price in cash, the security problem would disappear. In *Phillips v. Johnson,* 266 Or 544, 557, 514 P2d 1337 (1973), the Supreme Court approved such a cash sale where uncertainties in the earnest money receipt would have defeated specific performance. There, the agreement specified that the balance was to be paid *on or before* July 30, 1972. The court concluded that by these terms the plaintiffs were given an election to pay the entire balance in cash, and the defendants were required to accept that payment. In the present case, the contract provides for payments on a land sale contract at *not less than* $625 per month. As in *Phillips,* this provision gives plaintiff the right to pay the entire contract balance in cash. *See Mathers v. Eddy,* 267 Or 191, 515 P2d 912 (1973). Payment in cash would remove plaintiff's obligation to provide security property and would allow the granting of specific performance upon a determination of defendant Fenwick's interest.

The trial court concluded that it would be too difficult to sort out the problems associated with settling the equities between defendants Uyeda and Fenwick. However, because Fenwick took possession of the property with actual knowledge of plaintiff's prior interest, the fact that Fenwick subsequently improved the property should not be a bar to specific performance. The judgment of the trial court denying specific performance and awarding equitable compensation is reversed.

Defendant Fenwick should be required to provide an accounting of all funds received and all sums expended for the down payment, monthly payments, operational expenses and capital improvements. In addition, she should be credited reasonable compensation for her management services. If she has received greater rental income than the

amount she has expended, after an allowance for her services, she is required to return the remainder to defendant Uyeda. On the other hand, if her expenditures and services exceed the rental income, defendant Uyeda shall pay her the difference out of the purchase price paid by plaintiff. Because there may be additional factors to be considered, that can best be done in an accounting by defendant Fenwick.

The trial court should issue a decree requiring specific performance upon payment by plaintiff of the purchase price in full in cash with interest at the legal rate since the date he demanded performance and requiring an accounting by defendant Fenwick. Because of the disposition of this issue, we need not consider plaintiff's second assignment of error.

Reversed and remanded for entry of a decree setting aside the conveyance from defendant Uyeda to defendant Fenwick, requiring defendant Uyeda to convey the subject property to plaintiff upon receipt of the purchase price in full with interest from plaintiff and requiring defendant Fenwick to render an accounting. Plaintiff is awarded costs against defendant Fenwick only.

**BUTTLER, P. J.,** dissenting.

Aside from what appears to me to be a grossly unfair result reached by the majority, this case presents an important issue involving the scope of an appellate court's authority on *de novo* review. Must the appellate court wear blinders, or may it review the record anew, even though there is no cross-appeal?

In this action, plaintiff seeks specific enforcement of an earnest money agreement. Defendants contended that the agreement was not enforceable because, *inter alia,* it was not sufficiently definite and because subsequent to its execution plaintiff attempted to modify it in certain particulars which were not accepted by defendant Uyeda. The trial court concluded that the agreement was enforceable but could not be specifically enforced for numerous reasons. Accordingly, it awarded plaintiff monetary damages.

Plaintiff appealed, contending that he is entitled to specific performance. Neither defendant cross-appealed. However, they counter plaintiff's argument with the contention that plaintiff is not entitled to specific performance, because the agreement was not enforceable. Obviously, if the agreement is not enforceable, it may not be specifically enforced. Defendant Uyeda also contends that the trial court should not have awarded damages to plaintiff.

The majority hold that defendants may not even *contend,* in response to plaintiff's appeal, that the agreement is not specifically enforceable because plaintiff failed to prove an enforceable agreement. 56 Or App at 837. Accordingly, the majority start with the assumption that the agreement is enforceable and, given that starting point, conclude that it should be specifically enforced. They say they are compelled to approach our review *de novo* in that manner, because a "respondent who has not cross-appealed cannot obtain here a judgment more favorable to him and less favorable to the appellant than the judgment entered below." 56 Or App at 837. The cases cited support that statement.

But that proposition is substantially different from a non-cross-appealing respondent arguing that he should not come out any worse in this court, because the trial court gave the appealing plaintiff more than he was entitled to. I find it impossible to accept the majority's view that we must treat as inviolate the trial court's legal conclusion without even considering the respondent's contention. That permits the appellant to bootstrap himself, as here, into a better position. In my opinion, the agreement was not enforceable, specifically in equity or for damages at law.[1]

---

[1] At the time the earnest money agreement was signed, Mr. Uyeda, now deceased, was dying of cancer; Mrs. Uyeda, the defendant, required an interpreter, because she was fluent only in Japanese. A mere reading of the earnest money agreement and the addendum boggles the mind, even to one who reads and understands English. It is obvious that not only was a definitive integrated contract both contemplated and necessary, but that the proposed agreement, as best I can decipher it, was grossly unfair to the sellers, particularly without express limits on plaintiff-buyer's right to mortgage the property, express agreement on additional security to be given the sellers and the release of that security from time to time.

Therefore, I would not grant plaintiff specific performance. Further, accepting *Gas-In Corporation v. Newton,* 263 Or 227, 501 P2d 1288 (1972), at face value, the most I would do is leave plaintiff with his ill-gotten award of damages, but give him no more.

Accordingly, I respectfully dissent.

---

Plaintiff paid no cash down; the total down payment was to come from a first mortgage loan to be taken by plaintiff when the property was deeded to him. The balance of $85,500, secured by a second mortgage with interest at 8 percent, was to be paid at $625 per month — a 25-year amortization period. If plaintiff failed to pay insurance and taxes, sellers were required to pay them and plaintiff was required to pay one-twelfth of the total with each mortgage payment, apparently without interest.

In apparent recognition of the many problems, plaintiff, for the first time, now says he will pay cash. That is a magnanimous offer, now that the property has doubled in value. If he had made that offer two years ago when the purported agreement was signed, this case would not be here.