Argued and submitted November 1, 1982, Court of Appeals reversed and judgment of trial court affirmed June 29, 1983, petition for rehearing denied August 2, 1983

## BOORAS,
*Respondent on review and*
*Petitioner on review,*

*v.*

## UYEDA,
*Respondent on review,*

*and*

## FENWICK,
*Petitioner on review and*
*Respondent on review.*

(CA 18375, SC 28634, 28663)

666 P2d 791

R. Bruce Dusterhoff of Case & Dusterhoff, Portland, argued the cause and filed briefs and petition for petitioner/respondent Booras on review.

Larry A. Dawson, Portland, argued the cause and filed briefs and petition for respondent/petitioner Fenwick on review.

Gerald R. Pullen, Portland, filed a brief for respondent Uyeda.

PETERSON, J.

## PETERSON, J.

This is a suit for specific performance of an earnest money agreement which provided for later execution of a land sale installment contract. We hold that if the buyer seeks to avoid the contractual indefiniteness which would prevent specific performance of the contract on an installment basis by paying the entire balance in cash, the buyer must allege, in the complaint, facts showing why such relief is appropriate and a prayer for such relief. The failure to do so bars specific performance in this case.

Plaintiff Booras sued defendants Uyeda and Fenwick for specific performance of a contract for the sale of a Portland apartment building.[1] The trial court refused specific performance, but awarded Booras $20,000 as "equitable compensation." On plaintiff's appeal, the Court of Appeals reversed the trial court and ordered specific performance "upon receipt of the purchase price in full with interest" with ancillary relief. *Booras v. Uyeda*, 56 Or App 834, 839, 643 P2d 413 (1982). We reverse the Court of Appeals and reinstate the trial court decree.

## I

### THE FACTS

The relevant facts are complex but must be summarized. In July, 1976, Uyeda listed the property with a realtor. In August, 1976, plaintiff made an offer to Uyeda on a standard printed "Earnest Money Contract" with additional terms added. In September, 1976, after negotiations regarding additional terms, the parties signed the agreement. The earnest money agreement was certain as to the property being sold; the price to be paid, $120,000; the down payment, $34,500; and payment of the $85,500 unpaid balance—"on a land sales contract at not less than $625.00 per month at 8% interest per annum which includes principal and interest." A number of other provisions were not agreed upon. The contract included

---

[1] The transaction here originally involved plaintiff Booras and another as purchasers and defendant Uyeda and her husband as sellers. Plaintiff's copurchaser subsequently assigned his interest in the property to plaintiff, and Uyeda's husband died. Uyeda later sold the property to defendant Fenwick. For convenience, we will refer to the transaction as if it had been between plaintiff and Mrs Uyeda.

a handwritten second page entitled "Addendum" which in part contained these additional provisions:

"1.   Seller to carry contract of $85,500.00 as a second contract and give buyer deed to said property. Buyer to apply for First Mortgage.

"2.   * * *.

"3.   * * *.

"4.   * * *.

"5)   Purchaser to provide security in other equity in the amount of $50,000. [Emphasis in original.]

"6)   Sellers Attorney to approve legality of contract.

"7)   Release clause in contact [sic] to free property in the event of potential sale by Buyer-Gradual Release of property as contract balance is depleted."

Between September and December, 1976, plaintiff obtained a first mortgage commitment of $50,500 from a local savings and loan, and appraisals and photographs of the properties that he intended to use to secure the payment of the unpaid balance. Plaintiff then presented the photos, appraisals and proposed mortgage and security documents to Uyeda's lawyer, Mr. Schneider. Schneider eventually concluded that the security would protect Uyeda and went to the Uyeda home to discuss the transaction with them. The Uyedas either did not understand the somewhat complex proposed security arrangement or did not want to go through with the deal.

In January, 1977, without prior notice to plaintiff, Uyeda relisted the property with another realtor. Defendant Fenwick, herself a realtor, became interested in the property and prepared an earnest money offer on her own behalf for its purchase. Although the price was the same as the plaintiff-Uyeda agreement, the terms were different. Fenwick was aware of plaintiff's claim to the property. Her offer contained this handwritten addendum: "Transaction subject to obtaining release of prior sale."

Although a release from Booras had not been obtained, Uyeda accepted Fenwick's offer in February, 1977, and a land sale contract was executed between Uyeda and Fenwick in April, 1977. The contract made no reference to the prior sale. Fenwick took possession of the property, started

receiving rent from the tenants, and, as time went on, made substantial improvements. In mid-1977, Booras and Uyeda entered into negotiations toward settlement of his claim against Uyeda. These negotiations finally collapsed and in March, 1978, plaintiff commenced this specific performance suit against Uyeda and Fenwick.

Plaintiff's complaint alleged that his earnest money agreement was a binding and enforceable contract for the sale of the property and that Uyeda breached the contract by refusing to convey to him and instead conveying to Fenwick. His amended complaint concluded with this prayer for relief:

"1. Ordering said defendant Uyeda to specifically perform said agreement;

"2. Requiring defendant Fenwick to execute all documents required to convey said property to plaintiff and to quiet any claim said defendant may have on said property;

"3. To appoint a receiver to whom plaintiff may make payments as they fall due, and order defendant Uyeda to furnish the title insurance called for in the agreement and convey the property when the final payment has been made by plaintiff;

"4. Declaring defendant Fenwick a constructive trustee of the rents and profits received from the operation of said real property from the time she took possession until the present;

"5. Requiring defendant Fenwick to make an accounting of said rents and profits and pay the same to the plaintiff.

"6. In the alternative if the court should find specific performance to be equitably impractical, the sum of at least $20,000 as equitable compensation; and

"7. For plaintiff's costs and disbursements incurred herein."

Defendants asserted affirmative defenses that plaintiff had not satisfied all of the conditions precedent to defendant Uyeda's obligation to convey, laches, estoppel, release, and lack of ability to understand the agreement.

After plaintiff rested, Uyeda moved for dismissal on the ground that the contract was too indefinite to be specifically performed. The motion was denied, and on June 23, 1980,

the trial court signed a judgment which contained detailed findings of fact and conclusions of law, including the following:

## "FINDINGS OF FACT

"* * * * *.

"9.   Mr. Schneider objected to some of the language in the additional security and release documents, and demanded that it be stricken. Plaintiff agreed. Mr. Schneider said that he would draft the documents reflecting the changes, which he would recommend that his clients sign. This was during the month of December 1976. Nothing was heard from Mr. Schneider or the Uyedas until on or about January 21, 1977, when he informed Mr. Beres, the listing agent, that the Uyedas did not 'understand' and would not proceed with the sale. No reasons were given by Mr. Schneider for the Uyedas' failure to understand.

"* * * * *.

"14.   At the time plaintiff discovered the Uyedas' unwillingness to consummate the transaction with him, the fair market value of the subject property was $140,000, as compared to the Uyeda-Booras contract price of $120,000. At the time of trial in this matter, the fair market value of the property was $220,000. * * *

## "CONCLUSIONS OF LAW

"* * * * *.

"2.   The Earnest Money Contract and Addendum between the plaintiff and the defendant Uyeda is a valid and legally-enforceable contract. It is sufficiently definite and certain to be capable of specific enforcement. It contains the basic elements of a contract as spelled out in many of the cases cited in counsel's legal memoranda. The contract identified the parties, contained a description of the real property involved, the amount and terms of payment of the purchase price, the rate of interest to be charged on the unpaid balance during the life of the contract, the type of securities to be given by the plaintiff to the defendant to insure payment of the balance due (a second mortgage on the property itself and a pledge of plaintiff's equity in additional property in a specified amount), and a general provision for a release of the additional securities as the balance of money due on the contract was reduced. The only details omitted were of a subordinate nature concerning the specific property plaintiff would offer as additional

security and the timing of their corresponding release as security upon the occurrence of later events. These details were later supplied and agreed to.

"* * * * *."

With regard to the remedy, the court concluded:

"5.  Because of the changed position of the parties and the events which have occurred subsequent to the execution of the Uyedas' agreement with plaintiff, including the death of Mr. Uyeda, investments made by defendant Fenwick in the subject property, the settlement negotiation between plaintiff and defendant Uyeda, the subsequent disposition by plaintiff of some of the property which was to be used as additional security, and the lapse of time, the court is of the opinion that it would be quite impractical, difficult, and time-consuming to specifically enforce the Earnest Money Contract and Addendum, and that equitable compensation would be a more just and equitable disposition of the case.

"In determining the amount of compensation that would be fair and just, the court believes that the difference between the value of the property at the time that the contract was repudiated and the price the parties agreed that he would pay for it would be a just and equitable measure of the compensation to be allowed the plaintiff. That amount is $20,000, as testified to by defendant Fenwick ($140,000 fair market value less the $120,000 contract price).

"Accordingly, plaintiff has been damaged in the sum of $20,000. Plaintiff is entitled to a judgment as equitable compensation against the defendant Uyeda for the sum of $20,000, and for his costs and disbursements incurred herein.

"* * * * *."[2]

Plaintiff appealed, asserting (1) that the trial court erred in awarding "equitable compensation" in lieu of specific performance, and (2) that if specific performance is denied, he

---

[2] Strictly speaking, where a money judgment is awarded in lieu of any requested equitable relief, it is in the nature of legal damages, not "equitable compensation." As stated in *Wittick v. Miles,* 274 Or 1, 6-7, 545 P2d 121 (1976):

"* * * Equitable compensation is the remedy in equity where complete performance is impractical. Equitable compensation is not synonymous with damages at law for breach of contract; it is given ancillary to specific performance or as a modification of specific performance." (Citations omitted.)

*See Cameron v. Benson,* 295 Or 98, 664 P2d 412 (1983).

should receive prejudgment interest from January 21, 1977.[3] Neither defendant cross-appealed.

## II
### WHEN A PARTY WHO PREVAILED IN THE TRIAL COURT APPEALS SEEKING ADDITIONAL OR DIFFERENT RELIEF, A RESPONDENT MAY ASSERT ANY DEFENSE TO THE AWARD OF ADDITIONAL OR DIFFERENT RELIEF WHICH WAS ASSERTED IN THE TRIAL COURT, WITHOUT FILING A CROSS-APPEAL.

At the outset, we are met with a procedural question which requires resolution. Booras has appealed from a judgment in his favor, claiming that he is entitled to specific performance rather than damages. Uyeda has not cross-appealed, but nonetheless asserts (1) that the contract was not sufficiently definite to allow specific performance, and (2) that consequently, the trial court erred in even awarding damages. The Court of Appeals did not discuss the second point inasmuch as it ruled against Uyeda on the first, stating:

> "Although they filed no cross-appeal, defendants contend that the trial court erred in concluding that the contract was specifically enforceable, because plaintiff failed to prove a legally enforceable contract. Plaintiff argues that defendants cannot challenge that finding without cross-appealing. We agree. It is well settled that, although this court reviews a case in equity *de novo,* a respondent who has not cross-appealed cannot obtain here a judgment more favorable to him and less favorable to the appellant than the judgment entered below. * * *" 56 Or App at 837.

■ It is well established that when a plaintiff appeals from a judgment in plaintiff's favor contending that on *de novo* review he or she is entitled to additional or other relief, if a defendant does not cross-appeal the appellate court "may not render a judgment or decree more favorable to [defendant] and

---

[3] There was no request in the pleadings for prejudgment interest, which we have repeatedly required as a foundation for the award of prejudgment interest. *Shepherd v. Hub Lumber Co.,* 273 Or 331, 349, 541 P2d 439 (1975); *Lithia Lumber Co. v. Lamb,* 250 Or 444, 447, 443 P2d 647 (1968). *See also, Holman Transfer Co. v. PNB Telephone Co.,* 287 Or 387, 406, 599 P2d 1115 (1979). Even though plaintiff seeks equitable relief in his complaint, we will apply the rule stated above because the plaintiff's award is in the nature of damages recoverable at law. See footnote 2, supra.

less favorable to plaintiff than was the decree entered below." *Gas-Ice Corporation v. Newbern,* 263 Or 227, 234, 501 P2d 1288 (1972).[4] *See also Annot.,* 63 ALR 2d 911 (1981). Thus, Uyeda's election not to cross-appeal from the $20,000 judgment precluded the Court of Appeals and precludes us from considering her unenforceability argument as a basis for overturning the judgment or for disposing of this appeal in a manner less favorable to plaintiff than that judgment.

Plaintiff goes one step further and contends that defendants' failure to cross-appeal the trial court's finding that the plaintiff-Uyeda agreement was an enforceable contract precludes them from arguing otherwise on appeal.[5] In a number of cases we have held that a respondent may, without cross-appealing, assert any defense or theory raised in the trial court, even though the trial court rejected that defense or theory in reaching its result. *Riedel v. First National Bank,* 287 Or 285, 293-94, 598 P2d 302 (1979); *Bakker v. Baza'r, Inc.* 275 Or 245, 248 n 2, 551 P2d 1269 (1976); *Reid v. Reid,* 219 Or 500, 348 P2d 29 (1959).

---

[4] Similarly, in *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979), we held that where a defendant appeals from an adverse judgment and the plaintiff does not cross-appeal, the appellate court is foreclosed from considering arguments raised by plaintiff in response to the appeal which allege error and seek additional relief. 286 Or at 127 n 12. *See also Williams v. Mallory,* 284 Or 397, 406-07, 587 P 2d 85 (1978); *Nelson v. Hampton,* 206 Or 573, 578, 294 P2d 329 (1956).

[5] There is a substantial question whether defendant Fenwick could cross-appeal. Before the trial court her concern was to retain her interest in the property and to avoid any monetary liability to plaintiff. Her principal legal position, as noted, was that the plaintiff-Uyeda agreement was not an enforceable contract. Although the trial court rejected that argument, its ultimate disposition of the case—viz., denial of plaintiff's request for specific performance and a money judgment running only against her codefendant Uyeda—was totally in her favor. There is a substantial body of authority supporting the proposition that a defendant who has obtained a judgment on the merits wholly in her favor, albeit not upon the legal theory she preferred, cannot appeal so as to obtain affirmance of the result upon a different legal theory. *See* 4 Am Jur 2d, Appeal & Error § 184 (1962); Annot., 69 ALR2d 749, § 16 (1960). The only authority in Oregon supporting that proposition, *Hume v. Turner,* 42 Or 202, 208, 70 P 611 (1902), was based upon the predecessor to the present appeals statutes, ORS chapter 19. Fenwick has argued that if she is prevented from raising the unenforceability argument without a cross-appeal, she would be caught in an unfair "catch-22" because she cannot cross-appeal and she would thus be deprived of her best defense against plaintiff's request for specific performance. Given the result we reach here, however, defendant Fenwick's failure or inability to cross-appeal does not prevent her reassertion of her unenforceability theory on appeal, and it is unnecessary for us to resolve the question whether she could have cross-appealed.

In *Reid,* for example, the plaintiffs filed a two-count complaint seeking relief under two alternative theories, breach of contract and adverse possession. The trial court rejected the first but granted relief under the second, and the defendant appealed. On appeal, this court rejected the second theory and the question arose whether the decree could be sustained based on the first theory despite the fact that plaintiffs did not cross-appeal. The opinion states:

> "It would thus appear that if the decree of the lower court in favor of plaintiffs is to be sustained, it must be sustained under the allegations contained in plaintiffs' first cause of suit. The plaintiffs not having appealed from the lower court's ruling adverse to them on their first cause of suit, defendant contends that the lower court's ruling thereon is not subject to review by this court. This contention is without merit. The authorities on which the defendant relies merely support the doctrine that a respondent who does not cross appeal is not entitled on an appeal taken by the adverse party to a decree more favorable than that which was obtained by the respondent in the lower court. * * *." 219 Or at 509-10.

The opinion cites several authorities for the proposition that a judgment may be affirmed upon a ground which was rejected by the trial court even in the absence of a cross-appeal. *Id.* at 510-12. The court then considered the appeal under the theory which the trial court rejected.

██ The present case, however, differs in a significant respect from those above. In each of those cases, an unsuccessful appellant sought reversal of a judgment in respondent's favor. The alternative ground for affirmance advanced by the nonappealing respondent was one which would support affirmance in that it justified the identical relief albeit under a different theory. In the case at bar, plaintiff's complaint contained a request for specific performance or, alternatively, for damages. Damages were awarded to plaintiff. Plaintiff appealed from a judgment in his favor, seeking additional relief, specific performance of the installment contract. The defendants assert, as a defense to specific performance, the same defenses they asserted below. If successful, the defendants will not obtain a decree more favorable to them than was entered below. Defendants' argument that the plaintiff-Uyeda agreement was not a specifically enforceable contract was raised in the trial court, was properly reasserted in their respondent briefs, and does meet and possibly rebut plaintiff's

argument on appeal. Therefore, we will consider whether the earnest money agreement was specifically enforceable.[6] As stated earlier, however, we do not consider whether the contract was sufficiently definite to support the damage award against Uyeda, for she did not cross-appeal.[7]

## III

### THE EARNEST MONEY AGREEMENT WAS TOO INDEFINITE TO BE SPECIFICALLY ENFORCED

■■ Although we have serious reservations whether *any* contract resulted from the Booras-Uyeda earnest money agreement, we have no doubt that the September 7, 1976, agreement is not sufficiently definite to be specifically performed on the terms contained within it. To be entitled to specific performance, a contract must be definite in all material respects, with nothing left for future negotiation. *Phillips v. Johnson,* 266 Or 544, 556, 514 P2d 1337 (1973). The foregoing proposition is subject to an exception that "* * * [i]f there is

---

[6] Uyeda also contended that it was unnecessary for her to cross-appeal to preserve her claim of error with regard to the trial court's finding that the parties' earnest money agreement was an enforceable contract because this is a suit in equity and review was *de novo* in the Court of Appeals. *See* ORS 19.125(3). We have consistently held otherwise. In *Williams v. Mallory,* 284 Or 397, 405-06, 587 P2d 85 (1978), we held that even on *de novo* review we would not re-examine aspects of a decree which were allegedly erroneous and prejudicial to the respondent, in the absence of a cross-appeal. Thus, that appellate review is *de novo* does not obviate the necessity for a cross-appeal. *In re Waters of Umatilla River,* 88 Or 376, 402, 172 P 97 (1918); *McCoy v. Crossfield,* 54 Or 591, 592, 104 P 423 (1909). In any event, the decision in this case turns on a question of law.

Second, Uyeda points out that there is some authority for the proposition that a cross-appeal is unnecessary where the issue the respondent seeks to have reviewed is so intertwined with the issue raised by the appellant that resolution of the appeal necessarily entails reconsideration of it. *See Abrams v. Rushlight,* 157 Or 53, 69 P2d 1063 (1937); *United R. & Elec. Co. v. West,* 280 US 234, 50 S Ct 123, 74 L Ed 390 (1930) (overruled on other grounds *FPC v. Hope Natural Gas Co.,* 320 US 591, 64 S Ct 281, 88 L Ed 333 (1944)). In this case, however, the question of whether plaintiff should have been granted specific performance instead of merely damages can be decided without a re-examination of the question of whether the agreement was an enforceable contract for conveyance.

[7] It has been held that a contract may be sufficiently definite to support an award of damages but not sufficiently definite to be specifically performed. *Glazer v. Glazer,* 374 F2d 390, 404 (5th Cir 1967) (applying Ohio law). *Gulbenkian v. Gulbenkian,* 147 F2d 173, 175 (2d cir 1945). *Also cf.* Restatement (Second) of Contracts § 362, Comment *a.* (1981). *But see Landgraver v. DeShazer,* 239 Or 446, 448, 398 P2d 193 (1965).

We note that Uyeda's trial attorney filed no cross-appeal and subsequently resigned from the bar. Her present lawyer was not substituted until over seven months after the notice of appeal was filed, too late to file a cross-appeal.

sufficient intent expressed to make a legally valid contract, a court of equity can make certain by its decree, within limits, subordinate details of performance which the contract itself does not state." *Howard v. Thomas,* 270 Or 6, 13, 526 P2d 552 (1974); *accord, David M. Scott Construction v. Farrell,* 285 Or 563, 572, 592 P2d 551 (1979).[8] The parties do not disagree with these rules; rather, they disagree as to their application in this case.

■ The earnest money agreement expressly referred to the preparation of a "land sales contract." The land sale contract was to include additional provisions, some for the plaintiff's benefit, some for Uyeda's. The buyer wanted a "release clause," for "Gradual Release of property as contract balance is depleted." The release clause would have required an agreement between the parties, among other things, as to how much of the outstanding contract balance the buyer must pay before a partial release would be given, and what portion of the security would be released.

Because Uyeda was subordinating her security in the property to a first mortgage of $50,500, she insisted upon "security in other equity in the amount of $50,000." That provision required a further agreement between the parties concerning the identification of the other properties, what type of security instrument would be used, and what default provisions would be applicable.

The earnest money also required that Uyeda's lawyer approve the "legality of contract." The precise meaning of that phrase is not clear. Whatever its meaning, it is clear that further documents were to be prepared and approved by her lawyer, and agreed to by Uyeda. The provision that seller's attorney would approve the contract did not make Schneider the attorney-in-fact for Uyeda. Schneider's statement that "he would recommend that his clients sign" (a quotation from the trial court's findings) is nothing more than that—a statement that he would recommend that his clients agree. Agreement of the seller to further needed provisions—material, important parts of the contract—was lacking and was never obtained.

---

[8] A contract which is ambiguous—as for example, if the description of the property is unclear—can be specifically enforced if other evidence exists to show what the parties in fact agreed upon. *Phillips v. Johnson,* 266 Or 544, 551, 514 P2d 1337 (1973).

A court of equity cannot, under the guise of "filling gaps" make the contract which it thinks the parties would have agreed to. *See Howard v. Thomas, supra,* 270 Or at 9. The court can only enforce an existing agreement which is so definite in its terms that the court can frame a decree to compel performance.

There is no way that a decree could have been framed to compel, as prayed for in the plaintiff's complaint, specific performance of the earnest money agreement according to its terms. True, this court in recent years has adopted a "less restrictive rule" (less restrictive than the rule announced in *Smith v. Vehrs,* 194 Or 492, 242 P2d 586 (1952)) in favor of construing agreements so as to carry into effect the reasonable intentions of the parties. *Howard v. Thomas,* 270 Or 6, 10, 526 P2d 552 (1974). In *Howard v. Thomas, supra,* even though the parties had not agreed as to the form of the security instrument, we ordered specific performance of an earnest money agreement, including execution of a standard warranty deed and a note "secured by a first mortgage prepared on Stevens-Ness form No. 105A," 270 Or 13-14. In *Southworth v. Oliver,* 284 Or 361, 587 P2d 994 (1978), we ordered specific performance of an offer which stated only the purchase price and "terms available—29% down—balance over 5 years at 8% interest." We held:

> "* * * We also believe that the terms as stated in defendants' written offer, as accepted by plaintiff, resulted in a contract which was sufficiently definite and certain to justify specific performance. Under the facts and circumstances of this case, the absence of agreement upon terms of 'security provisions' was a 'gap' in 'subordinate details of performance' of such a nature as to be properly 'made certain' by a decree of specific performance in a court of equity. As in *Howard v. Thomas, supra,* the decree of the trial court required the parties to sign a standard printed form document. In this case the document to be signed by both parties under the decree of the trial court is in the form of a printed land sale contract on installment payments, with standard form security provisions, as compared with a printed mortgage, with standard security provisions, in *Howard v. Thomas, supra.*" 284 Or at 380. (Footnote omitted.)

Here, one of the three parcels of real property in which Booras had an equity was owned with another and the

extent of his equity in each was not clear. There were existing mortgages against all of the parcels. Booras no longer owned one of the properties at time of trial. Moreover, one of the "equities" that he proposed for security was a security interest in another security interest which secured a third person's promise to pay Booras a sum of money arising from the sale of shares of corporate stock. Specific performance of the earnest money agreement according to its terms was not possible because the agreement itself was not specific enough to serve as the foundation of a specific decree. *See Van v. Fox,* 278 Or 439, 445, 564 P2d 695 (1977).[9] But that does not end the inquiry.

## IV
IF A BUYER SEEKING SPECIFIC PERFORMANCE OF AN INSTALLMENT CONTRACT AS AN INSTALLMENT CONTRACT SEEKS, AS ALTERNATIVE OR SECONDARY RELIEF, SPECIFIC PERFORMANCE UPON PAYMENT OF THE BALANCE IN CASH, THE COMPLAINT MUST SET FORTH FACTS SHOWING WHY SUCH RELIEF IS APPROPRIATE AND A PRAYER FOR SUCH RELIEF.

The Court of Appeals accepted the plaintiff's assertion that even if the contract was not specifically enforceable according to its installment terms, he is entitled to specific performance by payment of the entire purchase price in cash. *Phillips v. Johnson, supra,* and *Mathers v. Eddy,* 267 Or 191, 515 P2d 912 (1973), give support to plaintiff's claim. The Court of Appeals wrote:

"Plaintiff's failure to retain pledged security property is relevant only to the protection of defendant Uyeda's interest under the land sale contract. If plaintiff were to pay defendant Uyeda the full purchase price in cash, the security problem would disappear. In *Phillips v. Johnson,* 266 Or 544, 557, 514 P2d 1337 (1973), the Supreme Court approved such a cash sale where uncertainties in the earnest money receipt would have defeated specific performance. There, the agreement specified

---

[9] *Cf. Landura Corp. v. Schroeder,* 272 Or 644, 652, 539 P2d 150 (1975): ·

"On the other hand, to subject defendants to specific performance of this contract as one for payment over a period of 10 years would require this court to 'rewrite' the contract because of its incomplete and indefinite provisions of contract payments, mortgage security and partial acreage release. * * *"

that the balance was to be paid *on or before* July 30, 1972. The court concluded that by these terms the plaintiffs were given an election to pay the entire balance in cash, and the defendants were required to accept that payment. In the present case, the contract provides for payments on a land sale contract at *not less than* $625 per month. As in *Phillips,* this provision gives plaintiff the right to pay the entire contract balance in cash. *See Mathers v. Eddy,* 267 Or 191, 515 P2d 912 (1973). Payment in cash would remove plaintiff's obligation to provide security property and would allow the granting of specific performance upon a determination of defendant Fenwick's interest." 56 Or App at 838.

In *Phillips v. Johnson, supra,* an earnest money agreement for the sale of unimproved land required final payment within two years of the contract. We granted specific performance, saying:

"In this case, as previously stated, there was no agreement between the parties whether the sale of this land was to be consummated by a deed (or by deed, note and mortgage) or by a land sale contract. Neither was there any agreement upon the terms of provisions for foreclosure or other security provisions to be included in such a mortgage or land sale contract. We cannot say that such provisions were 'unimportant' to the parties, under the rule of *Smith v. Vehrs.* Neither can we say that such provisions were not considered by the parties to be 'essential provisions' or that they were 'mere details,' in the event that the rule of *Smith v. Vehrs* be considered to be subject to such a limitation.

"It follows that this 'Earnest Money Receipt' is not an enforceable contract in a court of equity by the remedy of specific performance insofar as it purports to bind the parties to the terms of a contract under which plaintiffs would be entitled to require defendants to accept installment payments over a period of time. Although, on occasion, earnest money agreements for the sale of land have been specifically enforced by this court, none of such cases involve facts, contentions and issues substantially similar to those involved in this case.

"It does not follow, however, that a court of equity is without power to provide any remedy in such a case. It will be noted that under the terms of the 'Earnest Money Receipt' the balance of $1,500 was payable in the following manner:

" '750.00 plus in. at 6% to be paid on *or before* July 30—1972 and $750.00 plus interest at 6% to be paid on *or before* July 30—1973 which will be final payment.' (Emphasis added.)

"By these terms plaintiffs were given an election to pay the entire balance of $1,500 in cash and, in such an event, defendants were required to accept payment of that entire balance in cash. Also, in such an event, the failure of the parties to agree upon provisions in a land sale contract or mortgage to insure future payments would become wholly irrelevant and superfluous. Indeed, there would then be no occasion for any land sale contract or mortgage, for the reason that upon making payment of the total purchase price plaintiffs would thereupon be entitled to receive a deed conveying good and sufficent title to the property, as defendants undertook to provide by the terms of the 'Earnest Money Receipt.' " 266 Or 556-58.

We therefore granted specific performance upon payment of the entire purchase price in cash on the theory that such a remedy would give the buyer his bargain and would give the seller what he had agreed to accept.

In *Mathers v. Eddy, supra,* the earnest money agreement provided for "terms to include payoff of contract within 15 months." 267 Or at 192. The earnest money agreement was claimed to be unenforceable because of the absence of provisions relating to default and responsibility for fire loss, insurance, repairs, taxes, and utility damages. We affirmed a trial court decree which ordered specific performance on the condition that the entire balance be paid in cash. 267 Or at 193.

This case, like *Phillips* and *Mathers,* presents a not uncommon situation: A buyer and a seller execute an earnest money agreement which sets out relevant terms (e.g., the parties, property, purchase price, closing date, and installment payment schedule), but which leaves other terms for later agreement by execution of a second contract or by execution of other documents. If the seller later refuses to perform, the usual first question presented is whether the buyer is entitled to specific performance of the earnest money agreement notwithstanding the agreement's indefiniteness as to those terms.

*Phillips* and *Mathers* stand for the proposition that (1) if the parties' agreement allows the buyer to pay the unpaid balance in cash, and (2) if a cash sale would obviate the problems with regard to indefiniteness, and (3) if the buyer is ready, willing, and able to perform a cash transaction, then the court can decree specific performance of a cash sale even though it could not have specifically enforced the agreement according

to its terms as an installment sale. In a sense then, every earnest money agreement or land sales contract providing for an installment sale which permits the buyer to pay the entire unpaid balance at any time and obtain a conveyance has within it two "contracts," upon full performance with either of which the buyer is entitled to a conveyance. The underlying principle of *Phillips* and *Mathers* is that where the parties' agreement gives the buyer a choice between alternative performances to obtain the conveyance (i.e., either a cash payment or some type of installment payments), the buyer may obtain specific performance as to that alternative which is certain (the cash sale) even though there are fatal flaws with regard to the other alternative (the installment sale) which would prevent a court from ordering specific performance.

Plaintiff seeks to invoke the *Phillips* rule. He points out that the parties' earnest money agreement specifically allows for payment of the entire unpaid balance at any time,[10] that payment in cash would obviate the indefiniteness and other problems inherent in the security terms of the earnest money, and that he is ready, willing, and able to effect a cash sale.

In many instances, a buyer's early invocation of the cash payment alternative would, as a practical matter, resolve the dispute. Particularly so when, as here, the disagreement relates to security provisions. It is not unreasonable to suppose that if as late as December, 1976, plaintiff had offered to pay the balance in cash, Uyeda would have performed.

The only theory of recovery alleged in the plaintiff's complaint was that Uyeda breached the earnest money installment sales agreement, as written. This is not surprising, for Uyeda, when the complaint was filed, was not in breach of the implicit contract alternative — payment of the entire balance in cash. The cash payment alternative was not asserted until the parties rested.

We believe that if when the complaint is filed a seller is not in breach of that provision in the contract which requires

---

[10] The earnest money agreement provides for monthly payments of "not less than $625.00 per month." *Cf. Landura Corp. v. Schroeder,* 272 Or 644, 652, 539 P2d 150 (1975). (Specific performance denied upon payment of cash because the contract did not permit the buyer to prepay installments.)

a conveyance upon payment of the entire balance and the buyer seeks to enforce that alternative method of payment and enforcement, the seller is entitled to notice that the buyer seeks specific performance of the implicit cash alternative method of performance in the event that the trial court refuses to grant specific performance of the contract on an installment basis. We hold that if a buyer seeking specific performance of an installment contract as an installment contract seeks, as alternative or secondary relief, specific performance upon payment of the balance in cash, the complaint must set forth facts showing why such relief is appropriate and a prayer for such relief, as a secondary remedy, if the court decides that the installment terms are not enforceable. The seller thereby will be on notice of the buyer's multiple claims for relief and the bases therefor.

■ Here, plaintiff's first request for specific performance by payment of cash was contained in a supplemental trial memorandum filed on February 4, 1980, more than three years after the date of Uyeda's refusal to convey. As a matter of law, the request was not timely.

The Court of Appeals is reversed. We reach the same result as did the trial court, although our analysis is not the same. The judgment of the trial court is affirmed. No costs.