Ralph W. BOESE
and Glennys Boese,
*Respondents,*

*v.*

Gordon B. KNIGHT
and Bonnie K. Knight,
*Appellants.*

(16-87-04332; CA A50824)

802 P2d 675

Harold D. Gillis, Eugene, argued the cause and filed the briefs for appellants.

Claud A. Ingram, Jr., Eugene, argued the cause for respondents. With him on the brief was Bick & Monte, P.C., Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

Plaintiffs brought this action for specific performance of an agreement to exchange real property, damages for breach of that contract and for unjust enrichment. After a trial to the court, judgment was entered for plaintiffs for $264,000 and specific performance of the exchange agreement; the other two claims were dismissed. Defendants appeal. We review *de novo,* ORS 19.125(3), and affirm.

Plaintiffs owned a ranch in Deschutes County and, because they were approaching retirement, wanted to sell it. Defendants Gordon Knight, a licensed real estate agent, and his wife wanted to buy plaintiffs' ranch at the agreed price of $264,000. Because defendants lacked funds with which to buy the ranch, the parties entered into an exchange agreement on December 12, 1980, under which defendants received title to and possession of plaintiffs' ranch, and plaintiffs received title to two parcels of land owned by defendants in Lane County. Plaintiffs had not seen defendants' land, did not want it and so advised defendants.

The agreement, prepared by defendants' attorney, provides, in part:

"Following conveyance of Lane Property by Knight, Knight shall use best efforts to sell Lane Property for Boese at a price of $264,000.00. No broker's fee, commission or other sales costs shall be paid by Boese in connection with the sale. The terms of sale shall be as follows:

"(i)    Twenty-five (25%) percent cash down payment.

"(ii)   Balance to be amortized over fifteen (15) years.

"(iii)  An annual interest rate of twelve (12%) percent, which shall be adjusted as agreed between the parties every two years. The first adjustment shall occur on January 1, 1983, and at two year intervals thereafter. The interest rate shall be adjusted to a rate which is commercially reasonable at the time, parallel to the parties' agreement that twelve (12%) percent is a reasonable commercial rate in 1981. If the parties cannot agree on an acceptable, adjusted interest rate, the question shall be submitted to binding arbitration under ORS Chapter 33. In no event shall the interest rate be less than twelve (12%) percent per annum nor greater than maximum legal rates under Oregon law.

"(iv)  The unpaid principal balance and all accrued interest must be paid in full on or before the end of the tenth (10th) contract year. There shall be no prepayment penalty.

"(v)  Any taxes, interest and penalties which may become due and payable because of a loss of the farm deferral or because of the above sale terms (Items (2) (i) through (iv) above), or a sale resulting from paragraph 2, page 4, it is agreed that these deferred taxes shall be the responsibility of Knight.

"In the event Knight fails to sell Lane Property within twelve (12) months of the date of this agreement, Knight shall promptly execute a sales agreement in which Knight agrees to buy Lane Property under the terms and conditions described in (i) - (v) above."

Because defendants had not found a buyer for the Lane County property by January, 1981, plaintiffs demanded that defendants execute a land sale contract in accordance with the exchange agreement. Defendants repeatedly refused to do so. After plaintiffs attempted unsuccessfully to sell the property for defendants, they filed this action in May, 1987.

Defendants contend that the agreement is not sufficiently definite and certain to permit specific performance and that their motion to dismiss that claim should have been granted for failure to state a claim for relief, ORCP 21A(8), relying on *Genest v. John Glenn Corporation,* 298 Or 723, 696 P2d 1058 (1985), and *Booras v. Uyeda,* 295 Or 181, 666 P2d 791 (1983). In *Genest,* the court reviewed earlier cases involving specific performance and disapproved some that were too liberal in granting that remedy. It concluded that the rules stated in *Booras v. Uyeda, supra,* should govern courts in determining whether specific performance should be allowed. 298 Or at 744. In that case, the court said:

"To be entitled to specific performance, a contract must be definite in all material respects, with nothing left for future negotiation. *Phillips v. Johnson,* 266 Or 544, 556, 514 P2d 1337 (1973). The foregoing proposition is subject to an exception that '* * * [i]f there is sufficient intent expressed to make a legally valid contract, a court of equity can make certain by its decree, within limits, subordinate details of performance which the contract itself does not state.'

"* * * * *

"A court of equity cannot, under the guise of 'filling gaps' make the contract which it thinks the parties would have agreed to." 295 Or at 191.

In short, a court may not supply material terms but may specifically enforce a contract, if it is certain what the parties intended. Here, it is clear what the parties intended. Plaintiffs wanted to sell their property for $264,000, and defendants agreed to buy it for that amount. Defendants were to pay plaintiffs by selling the Lane County property for that amount; if they sold it for less, they were to pay plaintiffs the difference, so that plaintiffs would receive $264,000. If defendants sold the Lane County property for more, they were entitled to the excess, leaving Boese with $264,000. If they were unable to sell the Lane County property within one year, they were required to purchase it under a land sale contract under the terms in the exchange agreement.

The only real issue is whether the material terms under which defendants must buy the property from plaintiffs are sufficiently definite to permit the court to frame a judgment for specific enforcement. The agreement is definite as to the price ($264,000),[1] the down payment is fixed (25 percent), the balance is to be amortized over a fixed period (15 years), and the unpaid principal balance, with interest, is to be paid on or before the end of the 10th year. Defendants contend that the frequency of payments is uncertain, because the agreement does not specify whether payments were to be made monthly, quarterly or annually. The agreement provides that payments made under the land sale contract are to be amortized over 15 years, not 180 months or 60 quarters. We agree with the trial court that a commonsense interpretation is that payments are to be made annually. The contract is sufficiently clear to permit specific enforcement.

Defendants also contend that plaintiffs repudiated the exchange agreement and waived their claim for specific performance by attempting to sell the property after defendants were unable to sell it within the one-year period. It is clear from the evidence that plaintiffs attempted to help defendants by trying to find a buyer; there is no evidence that

---

[1] Defendants argue that the price is uncertain, because the sales agreement was to include only "terms and conditions in (i) - (iv)," which did not state the sales price. That contention is frivolous.

plaintiffs intended to repudiate the agreement or to waive any of their rights. There was no error in entering judgment specifically enforcing the agreement.

Affirmed.