Argued May 6, affirmed September 26, 1974

HOWARD, *Respondent, v.* THOMAS ᴇᴛ ᴜx,
*Appellants.*

526 P2d 552

*J. C. VanVoorhees,* of Bodie, Minturn, VanVoorhees & Larson, Prineville, argued the cause and filed the briefs for appellants.

*Roy Kilpatrick,* John Day, argued the cause for respondent. With him on the brief were George F. Rakestraw, Redmond; Milo W. Pope, and Galbreath and Pope, Milton-Freewater.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE,* HOLMAN, TONGUE and HOWELL, Justices.

HOWELL, J.

Plaintiff filed this suit for specific performance of an earnest money receipt in which the defendants agreed to sell a ranch to plaintiff. The trial court

---

* Denecke, J., did not participate in the decision of this case.

entered a decree allowing specific performance subject to certain conditions, and defendants appeal.

The earnest money receipt provided the defendants would sell certain real property to plaintiff for $54,480, with $14,480 as "earnest money and in part payment," and the balance to be paid at the rate of $10,000 per year at 7 per cent interest, "or if seller desires the annual payment can be less." The receipt also allowed the sellers the right to select and retain 10 acres of the property sold, with the buyer having the right of first refusal on the 10 acres retained. The portion of the receipt relating to encumbrances on the property provided, "It is understood there is an existing timber sale contract with L. Lundgren now on place."

Defendants contend that the earnest money receipt is indefinite and incomplete and therefore incapable of specific performance.

In the defendants' answer they set forth 31 items which they contend are necessary elements in a contract to sell real property and which were not included in the earnest money receipt. The omissions included: a failure to delineate the type of security instrument which would be used in the sale; no description of the 10 acres of land to be retained by the sellers or defendants' right to ingress and egress to the 10 acres; no agreement on the terms of plaintiff's right of first refusal to purchase the 10 acres; and no provision setting forth the rights of the parties in the event Lundgren defaulted on his timber contract with defendants.

It is not necessary that we discuss all 31 items mentioned by defendants in their answer, because we

consider most of them to be inconsequential or to have been eliminated by the decree entered by the trial court, which we will discuss subsequently. We shall, however, discuss those mentioned in defendants' brief on this appeal and those which seem to be of most consequence to the defendants at the trial.

In *Smith v. Vehrs,* 194 Or 492, 242 P2d 586 (1952), this court stated the following relating to suits in equity for specific performance of contracts to sell real property:

> "It is a well-established rule of law in this state that equity will not decree specific performance unless the contract is definite, certain and complete. The court cannot make a contract for the parties, nor can it make clear that which is left in doubt and uncertainty. * * *" 194 Or at 499.

After stating the above rule the court continued and cited *Berry v. Wortham,* 96 Va 87, 30 SE 443 (1898), which was even more restrictive than the rule actually adopted in the opinion:

> " 'It is an elementary doctrine of courts of equity that they will not specifically enforce any contract unless it be complete and certain. * * * *it must be complete in all its parts;* that is, all the terms which the parties have adopted, as portions of their contract, must be finally and definitely settled, and none must be left to be determined by future negotiations; and *this is true without any regard to the comparative importance or unimportance of these several terms.'* " (Emphasis supplied.)

Portions of the language from *Berry v. Wortham,* supra, were cited by this court in *Phillips v. Johnson,* 266 Or 544, 514 P2d 1337 (1973), wherein we considered the necessity of setting forth the type of sale security agreement in an earnest money receipt which did not state whether the sale was to be consummated

upon execution of a deed with a mortgage to the vendors or by a contract of sale. The court determined that the earnest money receipt was deficient in certain "important" respects[1] and thus it was unnecessary to decide the extent of the restrictive rule that even unimportant terms of the contract must be agreed upon.[2]

■ With respect to specific performance of contracts for the sale of land we prefer a less restrictive rule than that announced in *Smith v. Vehrs,* supra. "The law does not favor, but leans against, the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained." 11 Williston on Contracts (3d ed) 813, § 1424. See also 5A Corbin on Contracts 283, § 1174.[3]

Unlike *Phillips v. Johnson,* supra, the earnest money receipt in the instant case stated (and the trial court found) that the down payment was to be paid

---

[1] "In this case, as previously stated, there was no agreement between the parties whether the sale of this land was to be consummated by a deed (or by deed, note and mortgage) or by a land sale contract. Neither was there any agreement upon the terms of provisions for foreclosure or other security provisions to be included in such a mortgage or land sale contract. * * *" Phillips v. Johnson, 266 Or 544, 556, 514 P2d 1337 (1973).

[2] "It has been suggested that the foregoing rules apply only to 'essential' contract provisions, and have no application to 'mere details,' at least in an action at law for damages for breach of contract, if not also to a suit in equity for specific performance. We need not, however, decide that question in this case." Id. at 556.

[3] According to Friedman, Contracts and Conveyances of Real Property (2d ed) 27, 34, § 1.3, "If the writing contains the substantial terms of a complete agreement it is enforceable." The substantial terms are: (1) the parties; (2) the subject matters; (3) the mutual promise; and (4) the price and consideration.

upon acceptance of title and delivery of a deed. Consequently, the defendants would be entitled to receive a mortgage from the plaintiff and, under the terms of the earnest money receipt, the mortgage would provide for the balance to be paid at the rate of $10,000 per year with interest at 7 per cent, and the trial court so provided in its decree.[4]

Regarding the defendants' complaint that there was no description of the 10 acres reserved, the defendant Mr. Thomas testified that he showed the surveyor what to survey and that he was "content" with the land that was surveyed. His only complaint was that he wanted to limit the time of plaintiff's right of first refusal to plaintiff's lifetime. This the trial court did in its decree, plus granting defendants the right of ingress and egress to the 10 acres.

The defendants also argue that the phrase, "It is understood there is an existing timber sale contract with L. Lundgren now on place," was added after Mr. Thomas signed the earnest money receipt and before Mrs. Thomas signed. Defendants also contend that the earnest money receipt was incomplete because it did not provide for the rights of the parties in the event Lundgren defaulted on the timber contract. Concerning defendants' first argument, the evidence was in conflict whether the statement was added after Mr. Thomas signed. The defendants testified it was added afterward, but plaintiff testified the statement was on the earnest money receipt at the time all parties signed. In any event, we fail to see how the reservation of the timber contract from the sale of the land to plaintiff could in any way be detrimental to de-

---

[4] A mortgage with these provisions was submitted to defendants, who made no objection to the mortgage but rejected the offer for other reasons.

fendants. It was clear from the instrument that plaintiff was not receiving any interest in the timber contract, and that defendants were retaining their interest.

■ An entirely different question, however, is presented as to what the respective rights of the plaintiff and defendants would be in the event of a default by Lundgren in his contract to remove the timber and whether the remaining timber would belong to plaintiff or to the defendants.

The defendants were very definite that they wanted all rights to the timber.⑤ The potential problem was resolved at the time of trial. Plaintiff's counsel, by a judicial admission in open court, stated that in theevent of a default by Lundgren, the balance of the timber would belong to defendants. The plaintiff also consented to the same provision. Under such circumstances the "[c]laimed 'incompleteness' of the writing * * * is rendered irrelevant by a finding that the omitted items were 'collateral' or have been supplied by the conduct of the parties * * *." 6 Powell on Real Property 330, § 927.

A reading of the record indicates that the defendants decided to attempt to withdraw from the sale, not because of the uncertainty of the terms of the sale, but for other reasons.⑥

---

⑤ Defendants wrote to plaintiff: "Regardless of what happens. If for any reason Leonard Lundgren's contract expires before he fulfills it. I want it understood clearly that the Timber shall belong to me."

⑥ The defendant James Thomas wrote a letter to plaintiff stating, in part:

"I told you and Kelsey several times I didn't want to sell out over at Service Creek, before I finally consented to do so.

■■ We believe that the earnest money receipt was sufficiently definite and certain to justify specific performance. The problems of any consequence which seemed to bother defendants at the time of trial were, in our opinion, resolved in favor of defendants by the decree of the court. The law is well established that the court, under proper circumstances, may it its decree providing for specific performance will in any "gaps" appearing in the contract.[2] As Professor Williston states:

> "If there is sufficient intent expressed to make a legally valid contract, a court of equity can make certain by its decree, within reasonable limits, subordinate details of performance which the contract itself does not state. * * *" 11 Williston on Contracts (3d ed) 814, § 1424.

■ In the instant case the decree provided that the defendants should execute and deliver to the clerk a standard warranty deed conveying the property described, with a reservation of the 10 acres to the defendants subject to rights of way and easements over the land, and that "the plaintiff shall have the right of first refusal in the event defendants are willing to sell the 10 acres during plaintiff's lifetime." The decree also provided:

> "The deed shall recite: There is an existing timber sale contract with L. Lundgren now on place.

---

However, I didn't realize it was going to cause so much hard feelings among the neighbors over there. I am sick and tired of the whole deal, especially Ed Kelsey, and still don't want to sell."

[2] "The fact that the parties omitted certain provisions that are commonly included may indicate an intention to be bound without them and the gaps may be provided for in the decree." 5A Corbin on Contracts 282, § 1174.

"2. Plaintiff shall deliver to the Clerk for the benefit of defendants $14,480, and his promissory note secured by a first mortgage prepared on Stevens-Ness form No. 105A, embracing the same description as the deed, for $39,000,[⊛] bearing interest at 7% payable at the rate of $10,000 per year, plus interest, interest to begin when plaintiff gets possession and annual payment to begin one year from the same date.

"3. Within forty days of the date of this decree, the defendants shall have the option to require the promissory note to run to them as survivors and the election to have the promissory note to be paid on a monthly, quarterly, semi-annual or annual basis.

"4. Possession will be delivered to plaintiff not later than 40 days from the date of this decree.

"5. Taxes and insurance will be prorated on the same date.

"6. The court retains jurisdiction and will examine and approve the various documents and supervise the closing of the sale.

"7. Neither party shall recover costs."

We agree with all the terms of the decree except that we believe the reference to the reservation of the Lundgren timber contract to be incomplete. The decree should provide that in the event Lundgren defaults in his contract to purchase the timber, all rights in the remaining timber covered under the contract shall belong to defendants.

■ The defendants also contend that specific performance should not be granted because plaintiff had not paid the $14,480 down payment to defendants. The obligation of plaintiff was to pay the down payment;

---

⊛ This figure was arrived at by subtracting $14,480 earnest money and $1,000 for the 10 acres retained by the defendants from the original purchase price of $54,480.

the defendants were obligated to execute a conveyance. The obligations were mutual and reciprocal, and the acts to be performed were concurrent acts. *Comstock Mfg. Co. v. Schiffmann et al.*, 113 Or 677, 234 P 293 (1925). The defendants cannot complain of the plaintiff's failure to pay the down payment as they refused to consummate the sale.

Affirmed; no costs.