77 F.3d 490
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James SCHREIBER, dba; Schreiber's Leisure Leasing,
Plaintiff-Appellant,
v.
PLUM CREEK TIMBER COMPANY INCORPORATED, Delaware
Corporation; Eric N. Haller, Defendants-Appellees.
 No. 93-35563.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1995.
Decided Jan. 2, 1996.
 
 Before: HALL, O'SCANNLAIN, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This is a diversity case in which James Schreiber (Schreiber), an independent logger, sued Plum Creek Timber Company (Plum Creek) and Eric Haller (Haller), one of Plum Creek's employees in Oregon Circuit Court. The defendants removed the case to the district court for the District of Oregon. Schreiber alleged fraud, negligent misrepresentation, and breach of contract. Schreiber subsequently abandoned his claim of negligent misrepresentation, and the district court granted summary judgment on the fraud and contract claims in favor of the defendants. Schreiber appeals. The defendants have filed a motion to strike portions of Schreiber's opening brief that rely on matters outside the record, and portions of the brief that do not contain citation to the record. We grant in part the motion to strike and affirm the summary judgment.
 
 I.
 
 3
 The Appellees filed a motion to strike and a memorandum supporting the motion. We grant the motion in part.
 
 
 4
 The memorandum argues that Schreiber's brief contains numerous references to matters outside the record. Schreiber nonetheless argues that "[t]he fact that 13-14 depositions exist is undisputed.... Plaintiff does not need to submit the transcripts of these depositions to point out that they exist." This argument is confused and without merit. Whether discovery "exists" is wholly irrelevant to the role of this Court or the district court in ruling on a motion for summary judgment.
 
 
 5
 The Appellees' memornadum also points to numerous assertions in Schreiber's brief that are unaccompanied by citation to the record. Schreiber responds that the unsupported assertions relate to "undisputed, background and contextual facts which ought not require citation to the record." Circuit Rule 28-2.8, however, admits no exception: "Every assertion in briefs regarding matters in the record shall be supported by a reference to the page or document number of the original record where the matter relied on is to be found." Schreiber's argument to the contrary is meritless.
 
 
 6
 We therefore grant the motion insofar as we have considered only evidence that is in the record in deciding this case.
 
 II.
 
 7
 The defendants are entitled to summary judgment on the contract claim because the evidence, viewed in the light most favorable to the plaintiff, reveals that Schreiber and Haller did not reach agreement on all the terms of the alleged contract.
 
 
 8
 [B]efore there can be a valid contract there must be a meeting of the minds as to all of its terms; that nothing can be left for future negotiation, and that if any portion of the contract is not agreed upon, or if no method is agreed upon by which such a term or provision can be settled, there is no contract.
 
 
 9
 Phillips v. Johnson, 514 P.2d 1337, 1343 (Or.1973).
 
 
 10
 Here, Schreiber claims that Haller's statements to the effect that Schreiber could work six to ten years, that $800 per day above payroll did not seem "out of reason," that the parties would enter written agreements on a yearly basis, and that Plum Creek would adjust unit prices if Schreiber were not "making it" constituted an offer that he accepted both orally and by his conduct in moving to Oregon in order to perform.
 
 
 11
 This "offer" did not specify the amount Plum Creek would pay Schreiber during the duration of the alleged contract. The fact that $800 did not strike Haller as out of reason cannot constitute a promise to pay $800 above payroll in light of the fact that the parties also discussed unit prices.
 
 
 12
 Moreover, Haller's statement that Plum Creek would adjust prices if Schreiber as not "making it" is not an enforceable promise. This statement is akin to a promise to do something in the future, which would be enforceable had the parties agreed upon a method of adjusting the prices. Cf. Phillips, 514 P.2d at 1343. Haller and Schreiber, however, did not discuss the circumstances in which, or the amount by which, Plum Creek might adjust prices.
 
 
 13
 Similarly, the "promise" to enter yearly written contracts is too vague to be enforced. In Oregon, a contract to enter a future contract is "nugatory" unless the parties agree to all material and essential terms of the future contract. Reed v. Montgomery, 175 P.2d 986, 995 (Or.1947). Schreiber, however, testified at deposition that he and Haller had not agreed on the terms of these future contracts, but that the pay he would receive under each new contract would be renegotiated on a yearly basis. The "promise" to enter yearly written contracts is therefore unenforceable.
 
 
 14
 The fact that Haller's "promises" were too vague to be enforceable is underscored by a comparison with the written contract the parties did enter in March, 1989. This comparison reveals the numerous terms that would likely be "material" to an enforceable logging contract. The fact that the alleged oral contract touched upon none of these topics strengthens the conclusion that Haller's representations were too vague to constitute an offer.
 
 III.
 
 15
 The defendants are entitled to summary judgment on the fraud claim because the evidence Schreiber has submitted would not allow a jury to find the elements of a fraud claim by clear and convincing evidence. A successful claim would require Schreiber to prove by clear and convincing evidence that Haller made false statements of fact, knowing they were false, intending to mislead him, and that he suffered damage as a result of reasonable reliance on the misrepresentations. Cf. Oksenholt v. Laderle Lab., 656 P.2d 293 (Or.1982). Schreiber has failed to introduce evidence sufficient to create a jury question on any of these elements.
 
 
 16
 a) False Statements of Fact?
 
 
 17
 Based on the evidence submitted, a rational jury could not find that Haller made a statement of fact regarding the amount of money Schreiber would earn. Haller, in response to Schreiber's statement that he would need to earn $800 above payroll, responded: "That don't sound out of reason to me." This statement constitutes an opinion regarding the likelihood of Schreiber's earning a certain amount of money rather than an assertion of fact. As such, it cannot be the basis of an action for fraud. See Frank v. Fitz Enters., 806 P.2d 720, 721 (Or.Ct.App.1991).
 
 
 18
 Moreover, the evidence submitted would not allow a jury to find that the statements were false. Haller only said that prices on the yearly contracts would be adjusted; he never even allegedly represented that unit prices would change midway through the duration of one of the written contracts. Thus, Plum Creek was never given the opportunity to "adjust prices" because Schreiber ceased working prior to the termination of his first written contract. Similarly, a jury could not find that the statement that Schreiber would have six to ten years steady work was false because Schreiber stopped logging in the middle of his first contract, well before six years had passed.
 
 
 19
 b) Knowing the Statements Were False?
 
 
 20
 Nothing in the record indicates that Haller knew any of his statements was false.
 
 
 21
 c) Intending To Mislead?
 
 
 22
 Nothing in the record that would establish that Haller had an intent to defraud Schreiber. Cf. Pelletier v. Pelletier, 565 P.2d 388 (Or.Ct.App.1977) (fraudulent intent must be shown by more than mere nonperformance of a promise). At oral argument, counsel for Schreiber stated that a jury could infer intent from the fact that Haller told Schreiber that Terry Schaumberg made three loads a day when in fact Schaumberg never made three loads a day. We think that this fact, which appears in Schaumberg's affidavit, does not create a triable issue regarding whether Haller had the necessary intent to defraud.
 
 
 23
 d) Damage Resulting from Reasonable Reliance?
 
 
 24
 The record would not support a finding by clear and convincing evidence that Schreiber's reliance was reasonable. If a person's professional experience, combined with the exercise of reasonable care, should put him on notice that a representation may be false, he may not claim reasonable reliance on that representation. Cf. Johnson v. Jeppe, 698 P.2d 1020, 1025 (Or.Ct.App.1985).
 
 
 25
 Here, Schreiber testified at deposition that at no other time during his thirty-year logging career had he heard of a timber company offering such long term work to a logger with whom it had never before worked. His reliance on this representation is therefore unreasonable in light of his experience. Moreover, given that Haller also made statements regarding unit price, it was unreasonable to think that Plum Creek, which had no control over Schreiber's costs or production rate, would guarantee a certain level of income regardless of Schreiber's productivity.
 
 
 26
 Finally, even if Schreiber's reliance was reasonable, a jury could not find that all his damages were attributable to his reliance. Schreiber began thinning pursuant to a subcontract through Dave Laurie in November, 1988. He did not earn $800 per day above payroll during the six-week duration of this subcontract. Despite the fact that, as of that November, he should have known that any representation as to a guarantee of $800 per day was false, he sold his house and moved to Oregon in January, 1989. Thus, a jury could not find by clear and convincing evidence that the majority of his damage flowed from reliance on any misrepresentation.
 
 CONCLUSION
 
 27
 We GRANT IN PART the Appellee's motion to Strike Portions of Appellant's Brief and AFFIRM the grant of summary judgment on both the contract and the fraud claim.
 
 
 28
 O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:
 
 
 29
 I concur in Parts I and III of the majority memorandum disposition; I respectfully dissent from Part II.
 
 
 30
 The majority concludes that Plum Creek and Haller were entitled to summary judgment on Schreiber's contract claim because Schreiber and Haller did not reach agreement on all the terms of the alleged contract. I disagree and would remand for trial on this issue.
 
 
 31
 Oregon law disfavors the destruction of contracts because of indefiniteness. Howard v. Thomas, 526 P.2d 552, 554 (Or.1974); Delmar Crawford Inc. v. Russell Oil Co. Inc., 808 P.2d 1021, 1022-23 (Or.App.1991). At issue in Delmar Crawford was a contract to buy a petroleum plant and service station. The defendant submitted an offer to purchase a petroleum plant in Hermiston, including the land, improvements and "misc. equipment," and a service station in Pendleton. In addition, the offer "included an unexplained phrase 'Indemnification against pollution.' " Id. at 1022. The offer did not specify payment terms nor did it list the equipment to be included in the sale. The plaintiff accepted the offer, and the defendant took possession. Id. When the defendant subsequently changed its mind, it claimed that the contract was unenforceable because there were no payment terms. The court rejected that argument, holding that if a contract does not specify payment terms or indicate that payment terms are contemplated, a court will simply assume that the sale is for cash. Id. at 1023. The defendant next claimed that the contract was unenforceable because the "indemnification against pollution" phrase was indefinite. The court rejected this indefiniteness argument as well, stating that so long as "the intentions of the parties can be ascertained, the court will, if possible, construe an agreement so as to carry out those intentions." Id.
 
 
 32
 Yeon St. Partners v. Environmental Consulting Services, 865 P.2d 1325 (Or.App.1993), presents an even stronger case for Schreiber. In Yeon St. Partners, the plaintiff wished to buy a building in which the defendant tenant leased office space. The plaintiff orally asked the defendant whether it would be willing to vacate the building. The defendant responded that it would. The plaintiff then offered to pay the defendant's "reasonable" moving expenses and to move the defendant to equivalent office space of not more than equal rent. The defendant replied that it would cooperate with the plaintiff. Id. at 1326-27.
 
 
 33
 When the defendant subsequently refused to move, the plaintiff filed suit. The trial court granted specific performance to the plaintiff. On appeal, the defendant argued that specific performance was inappropriate because the terms of the agreement were not sufficiently definite. For instance "the parties did not settle on a deadline for defendant to move out, the moving costs were not itemized, and the parties did not define the term 'equivalent office space." Id. at 1327. The court rejected the defendant's argument, finding such matters unimportant. First, that the parties agreed that the plaintiffs would pay a "reasonable" price for moving costs was sufficient. "The term 'reasonable' is not so indefinite as to prevent an agreement from being enforceable." Id. Further, the court held that "even if the agreement concerning moving costs was indefinite, the court could order specific performance to effect the parties' intent." The court held that "[w]hen the conduct or expressions of parties to an agreement indicate a sufficient intent to make a contract, a court has latitude to fill in the gaps and, by its decree of specific performance, to formulate subordinate details of the agreement. Id. (emphasis added) (citing Howard v. Thomas, 526 P.2d at 555).
 
 
 34
 These cases indicate that the oral agreement in the instant case is enforceable despite the fact that the parties did not discuss certain terms. First, Oregon courts are far more concerned about indefiniteness when the plaintiff is seeking specific performance. Here, Schreiber is requesting money damages. Further, the parties' agreement is sufficiently definite even when analyzed under specific performance standards. In Booras v. Uyeda, 666 P.2d 791 (Or.1983), the Oregon Supreme Court stated the general rule that "to be entitled to specific performance, a contract must be definite in all material respects, with nothing left for future negotiation." Id. at 798. However, the court stated that this rule does not apply to "subordinate details" of the agreement which the parties may not have discussed. Id.
 
 
 35
 This case clearly falls within the exception. The parties agreed on the material terms: the job site, the work to be performed, the probable duration of the working relationship, and most importantly, the price that was to be paid. The parties agreed on a unit price subject to a minimum term of $800 a day above payroll. The majority suggests that the vagueness of Haller's promises are highlighted by a comparison with the written contract the parties did eventually enter into. This comparison is not probative, however, because such terms are "subordinate details of performance." The evidence indicates that the terms in the written contract that the parties had not previously discussed were standard terms in a logging contract.[1] The court has no reason to conclude that these terms were in any way negotiable. Further, as the Yeon St. Partners court held, "[w]hen the conduct or expressions of parties to an agreement indicate a sufficient intent to make a contract, a court has latitude to fill in the gaps...." 865 P.2d at 1327.
 
 
 36
 The majority states that "[t]he fact that $800 did not strike Haller as out of reason cannot constitute a promise to pay $800 above payroll in light of the fact that the parties also discussed unit prices." However, according to Schreiber's testimony as well as the testimony of the other loggers, the parties agreed that unit prices would prevail so long as Schreiber made $800 per day. If he didn't, then Haller promised to raise the unit price so that Schreiber would get at least $800 a day. Unit prices are by no means inconsistent with a guarantee of a base minimum. For instance, many employers pay salespeople by commission but guarantee them a certain hourly rate, in the event their commissions do not rise to that level.
 
 
 37
 Finally, the majority concludes that Haller's statement that Plum Creek would adjust prices if Schreiber was not making $800 per day is not enforceable because the parties failed to agree upon a method of adjusting prices. However, it would be relatively easy to determine Schreiber's average production after a suitable amount of time and then calculate the price per log that would be necessary for him to earn $800 per day above payroll. Indeed, Haller did just that when he asked Schreiber to come to his office in Kelso in June of 1989 and determined that he would have to pay $29 per ton on truck for pulp and $50 a thousand more for logs delivered.
 
 
 38
 Schreiber presented enough evidence to raise a genuine issue of material fact as to the contract issue. Summary judgment was not appropriate. I respectfully dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Schreiber stated that the contract that Plum Creek presented him was identical to the contract between Plum Creek and David Laurie