Argued and submitted July 14, amended judgment vacated; otherwise affirmed November 26, 1997, petition for review denied April 28, 1998 (327 Or 123)

## Tom and Heidi MEYER,
### husband and wife,
*Respondents,*

*v.*

## Mary F. KESTERSON,
*Appellant,*

*and*

## Laurence KESTERSON
### and Pacific Coast Timber Co., Inc.,
*Defendants.*

### (95-2007; CA A94811)

950 P2d 896

Harold L. Olsen argued the cause for appellant. With him on the briefs was Olsen, Huffman & Horn.

John F. Hunnicutt argued the cause and filed the brief for respondents.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Plaintiffs filed this action for specific performance of an earnest money agreement, pursuant to which they claim they are to purchase the subject property from defendant.[1] In the alternative, plaintiffs sought a money judgment for breach of contract. Defendant denied the enforceability of the earnest money agreement because of an uncertainty as to the payment terms and property description and also contended that the agreement terminated by its own terms 30 days after it became known to the parties that the property was not marketable. As a counterclaim, defendant asked that the earnest money agreement be rescinded due to mistake or that defendant be awarded restitution for having reforested the property and having obtained access to it.

As a matter in equity, the case was tried to the court. The trial court entered a judgment of specific performance requiring plaintiffs to tender the purchase price and defendant to tender to the clerk of the court a warranty deed conveying title to the premises. Defendant Mary Kesterson filed a notice of appeal. Plaintiffs thereafter filed a motion to amend the judgment to provide for an alternate remedy of the payment of $68,000, shown at trial to be the difference between the agreed-upon purchase price and the present value of the property, in the event that defendant was unable to convey marketable title. The trial court entered the amended judgment, and this amended notice of appeal followed.

Because this is a proceeding in equity, we review the record *de novo*. ORS 19.125(3). Defendant owned land in Columbia County that lay in Sections 11 and 14, Township 3 north, Range 2 west, Willamette Meridian. He logged the property and then sold two parcels to William H. and Sue A. Nesheim and two parcels to Leonard L. Olive, taking trust deeds in return. When Olive fell delinquent in his payments,

---

[1] Title to the subject property was held by defendant Mary F. Kesterson. Apart from holding title to the subject property, Mary Kesterson had no involvement in the events described. Her husband, Laurence Kesterson, has a power of attorney to handle all of Mary Kesterson's business matters, and when we use the word "defendant" in this opinion we mean Laurence, unless otherwise noted.

defendant hired attorney David Williamson to foreclose on the trust deeds.

In the fall of 1988, plaintiffs sought Williamson's legal advice in an unrelated matter. Coincidentally, plaintiffs had become interested in purchasing the subject property, which had been shown to them by Olive. Olive and plaintiffs agreed that plaintiffs would purchase the property for $32,000. As a down payment, plaintiff Tom Meyer, who is a builder, would do some construction on a house located on a different portion of Olive's property that plaintiffs would not be purchasing. After plaintiff Tom Meyer had done the work, plaintiffs and Olive had a disagreement concerning the amount of the down payment, and Olive insisted that plaintiffs pay additional cash.

In May 1989, plaintiffs asked Williamson for advice with regard to their dispute with Olive. Coincidentally, Williamson was preparing to foreclose on the trust deeds, and in June 1989, Williamson filed suit on behalf of defendant to foreclose on the two trust deeds, one of which covered the subject property. The action was settled when Olive signed deeds in lieu of foreclosure. At that time, aware that defendant was interested in selling the subject property, Williamson offered it to plaintiffs for the same purchase price that plaintiffs had agreed to pay Olive. As part of the down payment, Williamson promised that defendant would credit plaintiffs with $800 for the value of the construction work done by Tom Meyer on the house on the neighboring parcel, which also had been deeded back to defendant by Olive. Williamson told plaintiffs that defendant would accept an additional $4,000 as earnest money, and plaintiffs paid that amount to Williamson, to be held in a client trust account.

Plaintiffs thought that Williamson was their attorney, representing their interest in the Kesterson/Meyer transaction. In Williamson's view, he was representing only defendant in the transaction. In any event, Williamson acted as an intermediary between the parties. The parties in this case never met or spoke to each other until the taking of depositions in this litigation in July 1996.

On October 31, 1989, plaintiffs and defendant signed a Stevens-Ness form entitled "Owner's Sale Agreement and

Earnest Money Receipt," prepared by Williamson, which provided, in part:

"RECEIVED OF *Thomas J. Meyer and Heidi M. Meyer, husband and wife*, hereinafter called purchaser, *$4,800.00,* as earnest money and in part payment for the following described real estate situated in the City of *Scappoose*, County of *Columbia*, State of *Oregon*, described as follows, to-wit: *24 acres, more or less, on Coal Creek Road, part of Tax Lot No. 91-08-3214-000-0080—see attached map. Exact legal description to be provided at time of closing. (\*See Exhibit 'A' attached)* which we have this day sold to the purchaser for the sum of *Thirty-Two Thousand and no / 100* Dollars *$32,000.00* on the following terms, to-wit: The earnest money hereinabove receipted for *$4,800*; upon acceptance of title and delivery of deed or delivery of contract *$0*; \* \* \* balance of \* \* \* *$27,000* payable as follows: *monthly installments of not less than $____ each, including interest at the rate of 10% per annum, commencing on the ____ day of ____ , 1989, and continuing on the ____ day of each month thereafter until ____ , at which time the entire balance, principal and interest, shall be due and payable in full. Interest on all unpaid balances shall commence on ____ . Balance of $27,000 shall be secured by a trust deed and note.*"

The underscored portions of the form were blank lines that were filled in by Williamson, with the exception of the places that remained blank for monthly installments, the dates of the first and last payments, the due date for the balloon payment and the date on which interest accrues on the unpaid balance. The form portion of the earnest money agreement additionally provided that

"if title to the said premises is not marketable, or cannot be made so within thirty days after a written notice of defects delivered to seller, the earnest money herein receipted for shall be refunded. But if the title to the said premises is marketable, and the purchaser neglects or refuses to comply with any of the conditions of this sale within *30* days and to make payments promptly, as hereinafter set forth, then the earnest money herein receipted for shall be forfeited to the seller as liquidated damages, and this contract shall thereupon be of no further binding effect."

Attached to the earnest money agreement was a map with the subject property outlined by hand and highlighted in yellow. Also attached to the earnest money agreement was an addendum, which provided, in part:

"1. The downpayment of $4,800.00 shall be offset by $800.00 for labor performed by Purchaser, for a net downpayment due of $4,000.00.

"* * * * *

"3. The Purchaser understands that the property must be reforested and specifically agrees to assume that responsibility and that said reforestation has to be completed by May, 1991.

"* * * * *

"6. It is specifically understood and agreed that the title to the access road must be made marketable and sufficient to obtain clear title to the property at Owner's expense.

"7. It is further agreed that the purchase price in this transaction has been adjusted based on Purchaser's reforestation and acceptance of the other provisions set forth above."

Defendant's 1989 conveyances to Nesheim had landlocked the subject parcel. Although there was a road on the property that defendant had used while logging, that road was not intended to provide access to the property for future owners or development. Williamson agreed to make every effort to obtain legal access to the property so that the transaction could close. Paragraph 6 of the addendum accordingly provided that title to the access road to the property would have to be made marketable and sufficient to obtain clear title to the property, at defendant's expense.

Only one copy of the signed earnest money agreement existed, and Williamson kept it in his possession. Both Williamson and defendant testified that they believed that the agreement was not binding on defendant until the blanks were filled in and that the blanks would be filled in when the access problem was resolved and when plaintiffs made an offer of terms that were acceptable to defendant. Plaintiffs also knew that further negotiations were necessary concerning the details of the transaction, but they testified that they

believed that the agreement was binding on the parties, with only the details of closing and payment terms to be worked out after the access problem had been resolved.

On November 14, 1989, Williamson obtained a preliminary title report showing the property to be unmarketable because of the road access problem. After prolonged negotiations with the neighbors, Williamson filed suit to clear title and obtain access to the property. In 1992, the matter was settled, defendant agreeing to pay the neighboring property owners $4,000 for the right of access to the subject property. It was not until March 1994 that a judgment was signed. At that time, in addition to the settlement amount, defendant owed Williamson legal fees of approximately $15,000.

Plaintiffs periodically checked with Williamson during the pendency of the access matter. Williamson or his associate assured them that, although the matter would take some time, access would be obtained. In 1992, defendant grew concerned that the process was taking too long and would be too expensive, and he inquired of Williamson whether he was still bound to perform the earnest money agreement. In a letter to Williamson, he suggested that Williamson negotiate with plaintiffs for a higher purchase price. In January of 1994, Williamson suggested to plaintiffs that they may wish to negotiate with defendant in the light of the unexpected cost of obtaining access to the property. Williamson wrote a letter to each of the parties describing some of the problems that had delayed the acquisition of road access:

"Some of the main problems were tying much of the property in the roadway to an unrecorded plat and having owners along the road resist establishing any road at all on the property.

"The size, extent and cost of this legal action was never contemplated when the sale and sales price were discussed or the price would have been adjusted."

Williamson added:

"This has been an unfortunate, unexpected course of events. All went into it believing that obtaining access

would be a relatively inexpensive process taking a relatively short period of time. The price and the down payment were based on that."

Before the commencement of this proceeding, defendant refused plaintiffs' offer to pay the full settlement amount of $4,000 to neighboring property owners and also to split defendant's legal fees for Williamson's services. Defendant had learned that the property had tripled in value since the original $32,000 purchase price had been agreed to, and he was no longer willing to sell the property for the originally agreed-to amount. The parties negotiated through Williamson, but no agreement could be reached. Ultimately, aware that his clients had conflicting interests, Williamson advised both parties that he could no longer advise them. Later that year, upon instructions from defendant, Williamson returned the $4,000 earnest money to plaintiffs and advised them that the sale was off. They refused to accept the money, returned it to Williamson, and this lawsuit followed.

Although the parties' earnest money agreement called for an installment sale by note secured by a trust deed, in their complaint plaintiffs prayed for conveyance of the property by good and sufficient warranty deed "pursuant to the provisions of the parties' agreement within 90 days of the entry of judgment by the court or within such other reasonable time as the court may provide." In the alternative, they sought an award of damages equal to the difference between the purchase price in the contract and the current fair market value of the property.

The trial court ruled in favor of plaintiffs on the claim for specific performance and rejected defendant's request for restitution of reforestation costs and the costs to acquire access to the property. Subsequently, on September 3, 1996, defendant filed a motion for new trial on the issue of reforestation, which the court denied. Plaintiffs' attorney prepared the first judgment of specific performance, signed by the court on September 6, 1996, which ordered that the earnest money agreement be specifically performed by payment of $27,200 owing on the contract and tender of a warranty deed conveying title to the premises by defendant

"upon approval of the terms and conditions of a preliminary title report by Plaintiffs."

The court denied the motion for new trial on September 27, 1996. Defendant filed a notice of appeal on October 3, 1996, and an amended notice of appeal on October 14, 1996, to include the denial of the motion for new trial as a ground for reversal. On October 8, 1996, defendant tendered a warranty deed and preliminary title insurance report as required by the original judgment, which reflected new encumbrances not present at the time of the original judgment. Plaintiffs objected to the tender because of the additional encumbrances and on the ground that the description in the deed was not definite and certain. Plaintiffs filed a request for attorney fees, to which defendant objected for the reason that the amount was excessive. The trial court denied the objections on October 16, 1996.

On October 17, 1996, plaintiffs filed a motion to amend the original judgment for the purpose of clarifying deficiencies related to the property description and allowable encumbrances. The amended judgment also provided for the alternate remedy of a money judgment of $68,000 in the event that defendant was unable to convey the property. Defendant objected because of the pendency of the appeal, but the trial court granted the motion. Defendant filed a second amended notice of appeal on January 17, 1997. Plaintiffs also filed a request for supplemental attorney fees incurred in objecting to the deed and title report and in moving to amend the judgment. The trial court made an award of supplemental fees.

■ We take the assignments of error out of order for the ease of our analysis. In the second of 11 assignments of error, defendant argues that the court erred in ordering specific performance by cash sale, because (1) the earnest money agreement was uncertain as to its installment terms and in the description of the property, (2) the agreement was terminated by its own provisions due to the unmarketability of the property, and (3) the agreement did not entitle plaintiffs to purchase the property for cash.

■ To be specifically enforceable, an agreement must be definite, certain and complete in all material respects. *Booras*

*v. Uyeda*, 295 Or 181, 666 P2d 791 (1983).[2] In *Booras*, the court said:

> "To be entitled to specific performance, a contract must be definite in all material respects, with nothing left for future negotiation. *Phillips v. Johnson*, 266 Or 544, 556, 514 P2d 1337 (1973). The foregoing proposition is subject to an exception that * * * 'if there is sufficient intent expressed to make a legally valid contract, a court of equity can make certain by its decree, within limits, subordinate details of performance which the contract itself does not state.'" *Id.* at 191-92 (quoting *Howard v. Thomas*, 270 Or 6, 13, 526 P2d 552 (1974)).[3]

In the present case, defendant asserts, the terms of the contract were uncertain. Blanks were left for (1) the amount of the monthly payments; (2) the beginning date of those payments; (3) the day of the month when payments were to be made; (4) the final payoff date; and (5) the date when interest was to commence. Additionally, the line on the form on which exceptions were to be listed was blank, as was the possession date. Finally, the description of the property in the document is not complete. Taken together, defendant contends, those omissions make the contract unenforceable.

Plaintiffs agree that by its four corners the earnest money agreement is not enforceable as an installment contract. They argue, however, that the evidence at trial is sufficient to fill in the gaps as to many of the missing terms.

When, as here, a contract is not fully integrated, the court may admit evidence of the terms of the agreement that may not have been committed to writing. *Wescold, Inc. v. Logan International, Ltd*, 120 Or App 512, 521, 852 P2d 960

---

[2] We consider, also, the further limiting statement of the rule from *Howard v. Thomas*, 270 Or 6, 10, 526 P2d 552 (1974):

> " 'The law does not favor, but leans against, the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.' 11 Williston on Contracts (3d ed) 813, § 1424. *See also* 5A Corbin on Contracts 283, § 1174."

[3] Again citing *Phillips*, the court noted, as an example, that a contract that is ambiguous because of an unclear property description can be specifically enforced if other evidence exists to show what the parties in fact agreed upon. *Booras*, 295 Or at 192 n 8.

(1993). The earnest money agreement itself provided for a purchase price of $32,000, and a down payment of $4,800, with interest at 10 percent per annum. Heidi Meyer testified that before the earnest money agreement was signed, the parties had agreed to monthly payments of $300, with a balloon payment due in five years. Plaintiffs assert that the only terms not agreed to were the date of closing and final details of payment, which were dependent on resolution of the access matter. Assuming, however, as plaintiffs do, that the contract is inadequate as an installment agreement, it is nonetheless enforceable as a cash sale. The agreement itself provided for payments of "not less than" the agreed-to amount Implicitly, that language means that cash payment of the full purchase price is one acceptable means of performance. *See Phillips*, 266 Or at 557. Defendant admitted at trial that at the time the earnest money was signed, he would have been willing to accept $32,000 cash for the property.

■■ Defendant makes much of the fact that the earnest money agreement called primarily for an installment contract with a trust deed and note and that there was no *express* cash alternative. An earnest money agreement that calls for an installment contract nevertheless may be capable of specific performance as a cash sale, *Booras*, 295 Or at 196; *Phillips*, 266 Or at 558, provided that the parties' agreement allows the buyer to pay the unpaid balance in cash, the buyer is ready, willing and able to perform a cash transaction, and the plaintiff gives notice in the complaint of the intent to rely on the implicit cash alternative. *Booras*, 295 Or at 196. Although it is true that *before* they filed their complaint plaintiffs never requested conveyance in exchange for cash payment, in the original and amended complaints plaintiffs sought conveyance of the property on payment of the full purchase price and alleged that they were ready, willing and able to pay the full price. Here, as we have said, the contract provided for monthly payments of "not less than" the agreed-to amount, thereby giving plaintiffs the right to pay the entire contract balance in cash. The prayer sought judgment

"directing defendants to convey the real property * * * to plaintiffs by good and sufficient warranty deed pursuant to the provisions of the parties' agreement within 90 days of the entry of judgment herein by the court or within such

other reasonable time as the court may provide, on plaintiffs' execution of a trust deed and note as provided for in the agreement."

In response to defendant's objection to the remedy of a cash sale, the prayer was amended after trial to eliminate reference to the trust deed and note. In his sixth assignment, defendant separately assigns that ruling as error, contending that the amendment substantially changed the claim from one seeking specific enforcement of an installment contract to one seeking a cash sale and that that change resulted in prejudice to defendant. Despite reference in the prayer to the note and trust deed, we conclude that the amended complaint, read in its entirety, even with the language that was ultimately deleted, gave defendant sufficient notice of plaintiffs' intention to seek a cash sale. The amendment did not substantially change the claim.

■■ Defendant further asserts in the second assignment of error that the earnest money agreement was not specifically enforceable because it lacked an adequate description of the property. A description of land in a contract is adequate if it is possible for a surveyor to ascertain from the description, "aided by extrinsic evidence," what property was intended to be conveyed. *Phillips*, 266 Or at 550. At trial, the testimony of two surveyors indicated that, although the description of the property contained in the earnest money agreement was not sufficient to locate the subject property, the property could be located based on the November 1989 preliminary title report and other publicly available information. Further, defendant testified at trial that he knew the location of the subject property. As the court said in *Higgins v. Insurance Co. of N. America*, 256 Or 151, 156-57, 469 P2d 766 (1970):

> "The fact that the property was not properly described in the writing does not necessarily mean that *as between the parties* the contract was unenforceable. In deciding disputes between the parties to a land sale contract, courts, including this one, have often held that evidence showing that both parties clearly understood what land was intended, or that the seller had put the purchaser into possession of a particular tract, would cure uncertainties in the contract description of the land." (Emphasis supplied.)

*See also Western Hills v. Pfau,* 265 Or 137, 147, 508 P2d 201 (1973). There is ample evidence here that, despite the absence of a completely precise description of the property in the earnest money agreement, the parties knew which parcel of land was subject to the agreement. Plaintiffs had walked the property at the time they attempted to purchase it from Olive. Defendant testified:

"Q: Okay. When you sold the [subject property], was there any question in your mind what property it was that you were selling to the Meyers?

"A: No.

"Q: Okay. You knew exactly what parcel it was and you knew pretty close to where the boundary lines for that parcel were, didn't you?

"A: Fairly close."

The inadequate description in the earnest money agreement does not render the agreement unenforceable.

■ Plaintiffs draw on a "patent/latent" distinction, citing cases in support of the proposition that a patent ambiguity in a description of property found in a writing that is subject to the statute of frauds renders the instrument void, but a latent ambiguity can be clarified by extrinsic evidence. *See, e.g., Hertel v. Woodard,* 183 Or 99, 102, 191 P2d 400 (1948). As the court said in *High v. Davis,* 283 Or 315, 584 P2d 725 (1978),

"recent decisions have avoided the use of those terms, and with good reason. They are misleading, in our opinion, as is the suggested conclusion that extrinsic evidence will be freely admitted in the one instance but not in the other.

"When the results of our prior cases are examined, it is apparent that the real issue, when the sufficiency of the description of land in a contract is subject to the statute of frauds is challenged, is whether the written description, in light of the ascertainable objective facts and without resort to evidence of the parties' intentions or oral discussions of the transaction, can be said with reasonable certainty to apply only to one specific, identifiable, piece of property. If so, the writing is sufficient under the statute of frauds, although a complete description of the property may have to be obtained from other sources. For example, in *Kallstrom*

*v. O'Callaghan*, 259 Or 210, 485 P2d 1200 (1971), the writing (after reformation to correct a conceded error) described the property as 'the approx. 2 acre parcel located directly North and contiguous to 19705 S.W. Boones Ferry Rd.—Tualatin, Oregon.' Extrinsic evidence showed that there was only one parcel of land, consisting of two acres, directly north of and contiguous to the address given. And in *Burns v. Witter*, 56 Or 368, 108 P 129 (1910), the property was described in writing as 'my farm containing 40 acres.' The memorandum did not mention the location of the property, or state where the agreement was executed. The court held that if the proof showed that the sellers only owned one farm, and that that farm consisted of 40 acres, the writing was sufficiently definite for enforcement * * *.

"If, on the other hand, extrinsic evidence discloses that a written description can, with equal accuracy, apply to more than one piece of property, the writing will be held insufficient, and parol evidence will not be permitted to explain which of the possible properties the parties intended to describe. In such a case the statute of frauds serves its intended function by preventing the enforcement of an agreement when the subject matter of the writing can be ascertained only by parol evidence of the parties' agreement. ORS 41.580 forbids evidence, other than the writing, 'of the agreement.'" 283 Or at 323-24 (some citations omitted).

The admissibility of the extrinsic evidence concerning the location of the subject property was not challenged at trial. The only argument made was that the evidence could not be considered for the purpose of determining the adequacy of the description. As the quoted authority indicates, when there is only one possible property to which the agreement could apply, and no dispute concerning the existence of the property or which property is described, extrinsic evidence adequately describing the property is admissible, and the agreement will not be invalidated because of an inadequate description.

■ Defendant further asserts in the second assignment that the contract terminated by its own terms for lack of marketable access to the property. Paragraph 6 of the addendum to the earnest money agreement provided:

"It is specifically understood and agreed that the title to the access road must be made marketable and sufficient to obtain clear title to the property at Owner's expense."

The agreement further provided:

> "It is agreed that if the title to the said premises is not marketable, or cannot be made so *within thirty days after a written notice of defects is* delivered to seller, the earnest money herein receipted for shall be refunded." (Emphasis supplied.)

The contract provides for the return of plaintiffs' earnest money upon 30 days' notice of a failure to provide marketable title. In defendant's view, paragraph 6 of the addendum was plaintiffs' notice to defendant, pursuant to the second quoted paragraph, that the property was unmarketable, and when defendant was unable to provide clear title to the road within 30 days of the signing of the agreement, the agreement terminated by its own terms, and defendant's only obligation was to return the earnest money. It hardly requires discussion to dispose of defendant's suggestion that the parties intended the contract itself to be plaintiffs' notice to defendant that the premises was unmarketable. Both parties knew at the time the contract was executed that there was no road access and contemplated that defendant would acquire title to an access road. The parties worked toward completion of that goal for four years. If, as defendant contends, the notice of unmarketability was in the contract itself, then there was no reason for the contract to impose on plaintiffs the separate obligation to give notice of unmarketability. Plaintiffs never have provided a notice of unmarketability, and defendant therefore had no duty to return the earnest money. Defendant kept plaintiffs' earnest money for more than four years after the parties were aware that access to the property was in doubt and for one year after access had been acquired. The quoted provisions provide no ground for termination of the contract at this time.

■ Defendant next contends in the second assignment of error that plaintiffs did not show that they had a present ability to pay the full purchase price. The evidence shows that plaintiffs had the ability to pay. Heidi Meyer testified that plaintiffs had been preapproved for an equity loan of $27,000 on their home and that the money would be available in 90 days. Although plaintiffs did not have the cash at the time of trial, there is no contention that the money was not available

to them or that they would not have the money in time to make payment as ordered by the court. *Compare Voin v. Szabo*, 139 Or App 590, 913 P2d 717 (1996). The court did not err in ordering a cash sale of the property.

■ The first of defendant's assignments of error asserts that the trial court should not have rejected defendant's counterclaim for rescission of the earnest money agreement based on mistake. Defendant argues that the parties were mutually mistaken concerning the difficulty and cost of obtaining road access to the property. Defendant contends that the purchase price was based on that assumption and that when the quick and inexpensive acquisition of the access became impossible, the objectives of the contract were frustrated. Citing *Murray and Murray*, 120 Or App 216, 852 P2d 204 (1993), defendant asserts that that mutual mistake was so fundamental that it frustrated the purpose of the contract, thereby giving rise to the right to rescission. We reject the argument. As we said in *Murray*, a mutual mistake is a ground for rescission where the parties are mistaken as to the facts "existing *at the time of the contract*, if the mistake is so fundamental that it frustrates the purpose of the contract." *Id*. at 219 (emphasis in original). Here, there was no mistake as to the facts in existence at the time of the agreement. The earnest money agreement expressly provided that defendant had the obligation to provide access to the subject property, which both parties knew was lacking. There was no mistake about the status of the access to the property or the need to obtain access. The length of time and cost necessary for defendant to satisfy his own obligation under the agreement to obtain access to the property, although unanticipated, is not a basis for rescission.

■ Defendant contends further under the first assignment of error that he was unilaterally mistaken concerning the legal effect of the incomplete contract, erroneously believing it to be unenforceable until the blanks were filled in. That is evidenced, he asserts, by the fact that Williamson retained the only copy of the signed document pending the parties' agreement on the additional terms. Although it is true that parties may agree that a written and signed agreement shall not be "delivered" until the happening of a certain event, *Kinney v. Schlussel, et al*, 116 Or 376, 381, 387, 239 P 818

(1925), Williamson's retention of physical custody of the signeddocument, without more, does not render the contract unenforceable in the absence of some indication that the parties intended the contract not to go into effect until each party had its own signed copy. Further, as we have held, the contract itself was enforceable by its terms, despite what the parties may have believed. Defendant's mistake concerning the legal effect of the document is not the type of mistake that provides a ground for rescission. As the court said in *Shell Oil Co. v. Boyer*, 234 Or 270, 277, 381 P 494 (1963),

"[i]nequity sufficient to enable one to evade his contractual duties must be more than mere mistake concerning the legal effect of an instrument knowingly executed. It is not sufficient for a person desiring to be relieved of a duty to say, 'I did not mean to make such a bargain.' "

The law is similar concerning defendant's contention that it would be unconscionable to hold him to the contract in the light of the "great loss of time and expense" in obtaining access. It is not enough, as we have said, that defendant made what, in retrospect, turned out to be a bad bargain. *Puziss v. Geddes*, 96 Or App 154, 159, 771 P2d 1028 (1989).

■ Defendant contends in his fourth assignment of error that the trial court erred in rejecting his counterclaim for unjust enrichment seeking restitution for costs incurred in the acquisition of marketable title to the access road. He concedes that the earnest money agreement provides that he is responsible for making title to the access road marketable, at his expense; he asserts, however, that because the parties mistakenly believed that acquisition of access would be simple, quick and inexpensive, and because the acquisition costs were undertaken at a time when defendant mistakenly believed that the earnest money agreement was unenforceable, defendant should be compensated for the costs of improving the subject property. In support of his claim for restitution, defendant cites *Roesch v. Wachter*, 48 Or App 893, 618 P2d 448 (1980), which stands generally for the proposition that a person should be compensated for mistakenly and in good faith conferring a benefit on a third person when

permitting the person to retain the benefits without compensation for their reasonable value would be unjust enrichment. Here, however, the benefit was not conferred by mistake, but by virtue of defendant's obligation under the earnest money agreement. The fact that defendant may have believed erroneously that he had been freed of his obligation to plaintiffs did not, as a matter of fact or law, free him of it. We agree with plaintiffs that defendant is not entitled to restitution for doing what he was obligated to do under the parties' earnest money agreement.

 Defendant contends in his seventh and eighth assignments of error that the trial court erred in denying his request for restitution of reforestation costs and in denying his motion for new trial on the ground of surprise, so that he could establish his entitlement to restitution of reforestation costs. The addendum to the earnest money agreement required that plaintiffs reforest the property by May 1991. On that date, the transaction had not yet closed, as the access question was still being negotiated. Defendant testified that he reforested the property to meet requirements of state law. At trial, although he testified that he had not walked the property to see that the reforestation had been done, defendant testified that he had been recently billed by a reforestation company and that he believed the bill was for reforestation of the subject property. He testified, however, that he had not paid the bill. Plaintiff Tom Meyer testified that he walked the property on the first day of trial and did not see a single tree. We agree with the trial court that defendant failed to establish that the property had been reforested.

Contrary to defendant's contention, he could not have been taken by surprise by plaintiffs' discussion of the reforestation issue at trial. The question whether the property had been reforested during the pendency of the access litigation came up in plaintiffs' cross-examination of defendant, but it should not have been a surprise. As defendant noted in his brief, reforestation was a part of the agreement that plaintiffs were seeking to enforce. The trial court properly denied defendant's motion for new trial in order to establish his right to restitution for reforestation costs, especially in the light of our agreement with the trial court's finding

that there has been no reforestation and the undisputed evidence that defendant has not paid the bill for reforestation costs.

■■■■ In his tenth and eleventh assignments of error, defendant contends that the trial court erred in allowing plaintiffs' motion to amend the judgment of specific performance after the notice of appeal had been filed and in awarding supplemental attorney fees to plaintiffs for amendment of the judgment. We conclude that the issue is not before us. The filing of the notice of appeal terminated the jurisdiction of the trial court. ORS 19.033(1); *Ellis v. Roberts*, 302 Or 6, 725 P2d 886 (1986); *Murray Well-Drilling v. Deisch*, 75 Or App 1, 9, 704 P2d 1159 (1985), *rev den* 300 Or 545 (1986). Contrary to plaintiffs' contention, plaintiffs were not entitled to seek amendment of the judgment pursuant to ORCP 71 B(1), which provides for relief from a judgment in the event of mistake, inadvertence, surprise or excusable neglect.[4] Plaintiffs assert that they were taken by surprise by the addition of two encumbrances to the property after the trial court entered its original judgment, including a lien by Washburn Reforestation, and that the earnest money agreement cannot be specifically performed as ordered by the trial court without removal of the encumbrances. We express no view on the effect of additional encumbrances after the trial court's judgment requiring a *cash sale*. We conclude, however, that the "surprise" to which the rule refers is that which results from the taking of the judgment, *Caudill and Caudill*, 107 Or App 435, 438, 812 P2d 28 (1991), not that which results from actions taken by a party after entry of judgment. Because the trial court lacked jurisdiction as a result of the pending appeal, plaintiffs were not entitled to an amendment of the judgment. The trial court's subsequent actions were, accordingly, nullities. In the light of that disposition, we express no view with regard to the third assignment of error, which relates to the trial court's allowance of an amendment of the

---

[4] ORCP 71 B(1) provides, in part:

"On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: *(a) mistake, inadvertence, surprise, or excusable neglect*[.]" (Emphasis supplied.)

judgment so as to provide for a money judgment as an alternate remedy to specific performance of the earnest money agreement.

Defendant concedes that our holdings on the foregoing assignments of error are dispositive of his fifth, ninth and eleventh assignments of error, relating to the trial court's award of attorney fees.

Amended judgment vacated; otherwise affirmed.